Vanessa **LAXSON,** Appellant,

v.

**Judy GIDDENS, and Tony Wallace, Appellees.**

No. 10–99–215–CV.

Court of Appeals of Texas, Waco.

May 23, 2001.

Rehearing Overruled June 27, 2001.

J. Dwight Carmichael, McGregor & Carmichael, P.C., Hillsboro, for appellant.

Annette R. Loyd, Maloney, Bean, & Horn, Irving, B. Michael Chitty, Terrell, for appellee.

Before Chief Justice DAVIS, VANCE and GRAY, Justices.

## OPINION

GRAY, Justice.

The plan was simple enough, buy a horse cheap and sell it at a huge profit. There is nothing inherently wrong with this unless to accomplish the objective the seller commits a fraud or violates a statute. Here the buyer claimed she was duped into paying an outrageous price because of the actions of two individuals. The jury found both defendants responsible. The trial court disregarded the jury finding as to one of the defendants. We reverse the trial court's judgment and render judgment based on the jury's verdict.

### FACTUAL AND PROCEDURAL BACKGROUND

Vanessa Laxson won the lottery. She choose to invest a portion of her winnings in horses. Judy Giddens worked for Laxson as a horse trainer. Giddens knew Tony Wallace. Wallace knew Clay Whitehead. Whitehead owned a registered quarter horse, Sugars Alameda, that was reputed to have a distinguished blood line.

The plan was simple. Wallace would acquire the horse from Whitehead. Giddens would sell the horse to Laxson. Wallace and Giddens would split the substantial profit. To make the plan work, Laxson could not deal directly with Whitehead. Thus, Giddens and Wallace had to keep Laxson from knowing the true owner or location of the horse as well as the price paid to Whitehead.

The evidence was that through deceit about the ultimate purchaser of the horse and the price that the purchaser was willing to pay, Wallace acquired possession of Sugars from Whitehead for $3000. Giddens deceived Laxson and sold Sugars to Laxson for $25,000. Wallace and Giddens split the profit.

Upon discovery of the deceit, Laxson sued Giddens and Wallace under a variety of theories. The jury answered questions in favor of Laxson that Giddens had violated two separate provisions of the Deceptive Trade Practices Act, that there was a conspiracy between Giddens and Wallace, assessed damages of $22,000 and assigned responsibility as 60% to Giddens, 30% to Wallace and 10% to Laxson, and determined attorney fees. Upon Wallace's motion, the trial court disregarded the jury's answer to the conspiracy finding, and rendered judgment against Giddens for $19,800 (90% of $22,000), plus pre- and post-judgment interest and attorney fees.

## THE APPEAL

Laxson appeals the trial court's refusal to enter judgment against Wallace on the conspiracy theory. The first question on appeal is whether two or more individuals can be held liable for conspiring to violate the Deceptive Trade Practices Act. Wallace contends that the language of the act and case law do not support this theory of recovery. Wallace also contends on appeal that there was no evidence presented to the jury that would support the finding of conspiracy. Wallace contends that Laxson did not even know he was involved in the transaction and therefore he could not have violated the DTPA as to her because as a matter of law he could not be the producing cause of any damages to Laxson.

## CONSPIRACY TO VIOLATE THE DTPA

■ Wallace contends that conspiracy to violate the DTPA is not actionable. This appears to be an issue of first impression in Texas. Wallace is wrong. A conspiracy is defined as:

A combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.

*Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 856 (Tex.1968)(quoting *Great Nat'l Life Ins. Co. v. Chapa* 377 S.W.2d 632, 635 (Tex.1964)). As the Supreme Court further explained in *Schlumberger:*

But the gist of a civil conspiracy is the damage resulting from commission of a wrong which injures another, and not the conspiracy itself. *Starling v. Hill,* 121 S.W.2d 648 (Tex.Civ.App.—Waco, 1938, no writ); *Shelton v. Lock,* 19 S.W.2d 124 (Tex.Civ.App.—Amarillo, 1929, writ dism.); 16 Am.Jur.2d 149, Conspiracy, § 344.

\* \* \*

■ One without knowledge of the object and purpose of a conspiracy cannot be a co-conspirator; *he cannot agree, either expressly or tacitly, to the commission of a wrong which he knows not of.* In 15A C.J.S. Conspiracy § 1(2), p. 599, it is said that one of the essential elements required to establish a civil conspiracy is "a meeting of the minds on the object or course of action." And, of course, *one without knowledge of a conspiratorial plan or scheme to injure another by the commission of a particular wrong cannot share the intent to injure such other.*

*Schlumberger,* 435 S.W.2d at 856, 857 (emphasis added).

■ Violation of the DTPA is per se an unlawful act. There is no reason that when two or more persons agree to act together to violate the DTPA, they cannot each be held liable. Otherwise two persons could agree to each violate a portion of the DTPA for the express objective of deceiving a consumer but the consumer may not have a claim unless the consumer combines the conspirators' actions to show they acted together to achieve the objective which violated the act. We hold that two or more persons can be held liable for a conspiracy to violate the DTPA.

■ But the charge in this case asked about and defined conspiracy as follows:

Was Tony Wallace part of a conspiracy to engage in the actions described in Questions 4 or 5 [alternative forms of DTPA violations by Giddens] that damaged Vanessa Laxson?

To be a part of a conspiracy, Tony Wallace and another person or persons, must have had knowledge of, agreed to, and intended a common objective or course of action that resulted in the damages to Vanessa Laxson. One or more persons involved in the conspiracy must have performed some act or acts to further the conspiracy.

Answer: {Yes}

As worded, the charge does not require a finding that Wallace agreed to an unlawful purpose that caused the injury or an agreement to engage in unlawful conduct which caused the injury. The charge as worded only required a finding that Wallace "had knowledge of, agreed to, and intended a common objective." No objection to the wording of the charge as given was made.

Wallace did object that there was no evidence of a conspiracy to commit any of the deceptive trade practices upon which the question is based and that there is no cause of action for conspiracy to violate the DTPA. (CR vol. 4, page 102). We have already ruled against Wallace on his second objection. His first objection did not address the definition of conspiracy as contained in the charge.

■ We are required to review the sufficiency of the evidence based upon the charge submitted, even if erroneous. *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000); *Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568–569 (Tex.1985); *Allen v. American National Ins. Co.*, 380 S.W.2d 604, 609 (Tex.1964); *see also Wal–Mart v. Sturges*, 44 Tex. Sup.Ct. J. 486, 499, 2001 WL 228139 (March 8, 2001)(Justice O'Neil concurring). Because the trial court was obligated to render judgment on the jury verdict that was supported by evidence, Wallace's motion to disregard the jury verdict could not substitute for a proper objection to the definition in the charge of conspiracy. *Id.* In evaluating the motion to render judgment notwithstanding the verdict, the trial court must evaluate the evidence with regard to the charge given, not the charge that should have been given. A trial court may disregard a jury finding only if it is unsupported by evidence or if the issue is immaterial. *Spencer v. Eagle Star Ins. Co. of America*, 876 S.W.2d 154, 157 (Tex.1994).

In light of the charge given, it was undisputed that Wallace and Giddens had agreed to acquire Sugars and resell the horse to Laxson. They did. Wallace actively participated in this common objective by repeatedly going to Whitehead trying to acquire Sugars. His efforts, which were part of the agreed upon plan to acquire Sugars, ultimately resulted in acquiring Sugars from Whitehead. Sugars was then sold to Laxson. The entire transaction could not have occurred without Wallace's agreement and active participation. There was ample evidence to support the

jury's answer to the question and definition of conspiracy as worded.

### CONCLUSION

Because Wallace did not object to the definition of conspiracy as charged to the jury, we evaluate the evidence against the charge as given. There was ample evidence to support the jury's answer to the erroneously worded charge. The trial court erred by entering a judgment which disregarded the jury's finding of conspiracy. We sustain Laxson's issue and reverse the trial court's judgment and render judgment that Wallace is liable for 30% of Laxson's damages, plus pre-judgment interest thereon, plus post-judgment interest at 10% from the date of the judgment, and for attorney's fees in the amounts as determined by the jury. Giddens is jointly and severally liable with Wallace for Wallace's portion of the judgment. Giddens remains directly liable for 60% of Laxson's damages, costs, interest and attorneys fees as set out in the trial court's original judgment based on the jury's answers. Because of our disposition of these issues we need not reach the other issues presented in the briefs.