**Louis DEERE, D.O. and Hillvale Medical Group Association d/b/a Hillvale Medical Association, Appellants,**

v.

**Jesse C. INGRAM, Ph.D. and Behavioral Psychology Clinic, P.C., Appellees.**

No. 05–05–00063–CV.

Court of Appeals of Texas, Dallas.

April 27, 2006.

Georganna L. Simpson, Law Office of Georganna L. Simpson, Dallas, for appellants.

Karen Nalle Oddo, Roxanne Wilson, Craig T. Enoch, Winstead Sechrest & Minick P.C., Austin, for appellees.

Before Justices WHITTINGTON, WRIGHT, and MAZZANT.

## OPINION

Opinion by Justice WRIGHT.

Louis Deere, D.O. and Hillvale Medical Group Association d/b/a Hillvale Medical Association appeal the trial court's judgment granting a motion for judgment notwithstanding the verdict and rendering a take nothing judgment in favor of Jesse C. Ingram, Ph.D. and Behavioral Psychology Clinic, P.C. ("Clinic"). In his first point of error, Deere contends Ingram waived all the grounds raised in his motion for JNOV. In the remaining five points of error, Deere generally contends the trial court erred in rendering JNOV because (a) the evidence is legally sufficient to support the award of damages; (b) the evidence is legally sufficient to support the jury finding that Ingram owed a fiduciary duty to Deere; (c) the trial court properly admitted the testimony of Deere's expert witness; (d) the damages awarded to Deere were consistent with his pleadings; and (e) attorney's fees were properly awarded for breach of contract. We overrule Deere's first and third points of error. We sustain Deere's second, fourth, fifth, and sixth points of error. We reverse the judgment dated December 16, 2004 and render judgment reinstating the judgment of September 17, 2004.

## Background

### 1. Procedural History

This case involves an unusual procedural background. The case was tried before a jury. On June 15, 2004, Judge David Evans rendered judgment on the jury verdict in favor of Deere. Ingram filed a motion for JNOV and, on September 17, 2004, the trial court granted the motion to the extent of eliminating future damages accruing after trial and reducing the amount of attorney's fees. Also, on that same date, Judge Evans recused himself from the case.

Following the recusal, the case was assigned to Judge Merrill Hartman. Ingram filed a second motion for JNOV or alternatively, a motion for new trial. Judge Hartman conducted a hearing on the motion. He had no reporter's record from the trial to review. Judge Hartman initially indicated that he would grant the motion for new trial. Before Judge Hartman signed an order granting a new trial, Deere filed a document entitled, "Objections to Proposed Order and Motion to Reconsider Ruling on Defendant's Second Motion for Judgment Notwithstanding the Verdict or,

in the Alternative, Motion for New Trial." [1] Judge Hartman then granted the JNOV. Deere timely filed this appeal.

## 2. Factual Background

Prior to 1997, Ingram and Deere had known each other socially for many years. They had even treated some of the same patients. In December 1997, Ingram and Deere entered into an oral agreement whereby Deere agreed to be the medical director for a new pain management clinic. Ingram, a psychologist, could not operate the pain management clinic without a medical doctor. Deere is a licensed medical doctor.

As to the terms of the oral agreement, Deere contends he was to receive one-third of the revenues, Ingram was to receive one-third, and the remaining one-third was to be used to pay expenses. Ingram, on the other hand, contends they only agreed that Deere would receive one-third of the revenues. According to Ingram, there was no agreement as to the remaining two-thirds. Both doctors agree, however, that in June, 1998, at Ingram's request, Deere agreed to reduce his share of revenues to twenty percent.

Ingram eventually prepared a written agreement in March, 1999. Deere, however, refused to sign the Physician's Contractual Employment Agreement because he was not an employee. Deere also disagreed with the statement in the agreement that Ingram was the sole owner of the multidisciplinary pain clinic. At this point, Ingram maintains that Deere quit.

Deere filed suit on February 1, 2002. He asserted claims for breach of contract, specific performance, breach of fiduciary duty, declaratory judgment, fraud, and attorney's fees. The jury found that Deere and Ingram entered into a joint venture and that Ingram breached the joint venture agreement. The jury awarded damages for that breach in the amounts of $34,249.68 for the amount owed through March 1999; (2) $2,525,437.00 for the period of April 1999 through trial; and (3) $2,500,000.00 for the share of revenue to accrue after trial. The jury also found that Ingram owed a fiduciary duty to Deere and that he breached that duty. The jury then awarded damages, in the same amount, for the breach of fiduciary duty as for the breach of contract. Finally, the jury awarded Deere his attorney's fees.

Judge Evans rendered judgment on the jury verdict and Ingram filed a motion for JNOV. Following a hearing on the motion, Judge Evans rendered a new judgment deleting the award of $2,500,000.00 for the share of revenue after trial and reducing the amount of attorney's fees awarded. Deere does not contest this decision and asks that the judgment rendered by Judge Evans be reinstated.

Following Judge Evans's recusal, Ingram filed a second motion for JNOV or alternatively motion for new trial. On December 16, 2004, Judge Hartman granted the motion for JNOV and rendered judg-

---

1. In his Objections to Proposed Order and Motion to Reconsider Ruling on Defendant's Second Motion for Judgment Notwithstanding the Verdict or, in the Alternative, Motion for New Trial, Deere stated:

In the event that this Court has entered a ruling in this matter and has, in fact, overruled Dr. Ingram's Second Motion for Judgment Notwithstanding the Verdict and granted his Motion for New Trial as set forth in Dr. Ingram's proposed order, Dr. Deere requests this Court to reconsider that ruling, which would have the effect of denying Dr. Deere his right to appeal this Court's decision.... If this Court has determined Dr. Deere was precluded from his judgment based upon legal issues, then this Court may grant a Judgment Notwithstanding the Verdict on that basis, without depriving Dr. Deere of his right to appeal.

ment that Deere take nothing on his claims against Ingram. This appeal timely followed.

## Standard of Review

■ The Texas Supreme Court recently addressed the standards of no-evidence review (including legal sufficiency and motions for JNOV) in *City of Keller v. Wilson,* 168 S.W.3d 802, 810, 823 (Tex.2005). In conducting a no-evidence review, we must view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller,* 168 S.W.3d at 807. We review questions of law *de novo. Mitchell Energy Corp. v. Ashworth,* 943 S.W.2d 436, 437 (Tex.1997).

## The Second Motion for JNOV

■ Before addressing the merits of the JNOV, we address Deere's first point of error. Deere contends Ingram waived all grounds in his second motion for JNOV because he failed to provide Judge Hartman with a record from the trial.

■ In considering a motion for JNOV, a trial court must review the evidence. *See Laxson v. Giddens,* 48 S.W.3d 408, 411 (Tex.App.-Waco 2001, pet. denied). Judge Hartman did not preside over the trial. Thus, he needed a reporter's record to review the evidence. At the JNOV hearing, Ingram argued there was no evidence to support the judgment entered by Judge Evans. However, Ingram failed to provide a copy of the record for Judge Hartman's review. *See Birnbaum v. Law Offices of G. David Westfall P.C.,* 120 S.W.3d 470, 476–77 (Tex.App.-Dallas 2003, pet. de-

nied) (without a record to review, it is presumed the evidence supports the trial court's judgment). Nevertheless, the record is now before this Court and we will, therefore, review it to determine the propriety of the JNOV. Accordingly, we overrule Deere's first point of error.

Ingram raised the following five grounds in his second motion for JNOV:

1. the trial court erred in awarding $2,525,437 in damages because future damages are not recoverable for an oral partnership that is terminable at will;

2. the trial court erred in rendering judgment on breach of fiduciary duty because a partnership does not create a fiduciary relationship;

3. the trial court erred in admitting the testimony of Deere's expert as to damages because he was untimely designated and his opinion was incompetent;

4. the trial court erred in rendering judgment because Deere's pleadings do not support the judgment; and

5. the trial court erred in awarding attorney's fees.

Deere raises a point of error with respect to each of these grounds. We will address each in turn.

### 1. Future Damages

In his second point of error, Deere contends the evidence is legally sufficient to support the award of damages through trial. Deere contends that he remained a partner in the joint venture until the trial court rendered its judgment.

■ Initially we note that, in his second motion for JNOV, Ingram does not dispute the existence of a partnership agreement.[2]

---

**2.** We do not consider Ingram's contention that the agreement violated the statute of frauds inasmuch as this affirmative defense was not pleaded. A party waives his right to

assert the statute of frauds as a defense if he does not plead it. *See* Tex.R. Civ. P. 94; *Nicol v. Gonzales,* 127 S.W.3d 390, 393 (Tex.App.-

Rather, he argued the partnership was "at will" and that the evidence conclusively shows that the oral partnership terminated in March 1999. Thus, Ingram argued, Deere cannot recover damages beyond that point. The jury impliedly found that the partnership did not end in March 1999 because it awarded damages through the date of trial. We will review the evidence to determine whether it supports the jury's finding.

■ As an initial matter, we must determine whether the Texas Revised Partnership Act ("TRPA") applies to this case. Deere contends the TRPA governs the agreement in this case. Ingram, on the other hand, contends the agreement was a partnership "at will" and, thus, governed by the common law. The TRPA applies to both partnerships and joint ventures formed after January 1, 1994. TEX.REV. CIV. STAT. ANN. art. 6132b–2.02 (Vernon Supp.2005). Under the TRPA, a partnership agreement may be oral or written. TEX.REV.CIV. STAT. ANN. art. 6132b–1.01(12) (Vernon Supp.2005). To the extent a partnership agreement does not otherwise provide, the TRPA governs. *See* TEX.REV.CIV. STAT. ANN. art. 6132b–1.03(a) (Vernon Supp.2005); *see also Coleman v. Coleman*, 170 S.W.3d 231, 236 (Tex.App.-Dallas 2005, pet. denied); *Long v. Lopez*, 115 S.W.3d 221, 225 (Tex.App.-Fort Worth 2003, no pet.) (applying TRPA to oral partnership agreement). The parties entered into their agreement in 1998. Accordingly, we conclude the TRPA governs their agreement.

■ For a person to cease to be a partner, an event of withdrawal must occur. TEX.REV.CIV. STAT. ANN. art. 6132b–6.01(a) (Vernon Supp.2005). Section 6132b–6.01 lists ten events of withdrawal that do not require a partnership to wind up, including

a notice of a partner's express will to withdraw and a partner's expulsion as provided in the partnership agreement. *See* TEX.REV.CIV. STAT. ANN. art. 6132b–6.01(b)(1) & (3) (Vernon Supp.2005). On an event of withdrawal, the remaining partners have the right to continue the business and the withdrawn partner has the right to the value of his partnership interest. *See* TEX.REV.CIV. STAT. ANN. art. 6132b–7.01(a) & (b) (Vernon Supp.2005).

The TRPA does set forth specified events that do require the winding up of a partnership. *See* TEX.REV.CIV. STAT. ANN. art. 6132b–8.01 (Vernon Supp.2005). One of those events is a judicial decree that determines that it is not reasonably practicable to carry on the partnership business in conformity with the partnership agreement. TEX.REV.CIV. STAT. ANN. art. 6132b–6.01(b)(3) (Vernon Supp.2005).

In his motion for JNOV, Ingram argued that two events of withdrawal occurred in March 1999. First, Ingram alleged the partnership received notice of Deere's express will to withdraw. *See* TEX.REV.CIV. STAT. ANN. art. 6132b–6.01(b)(1) (Vernon Supp.2005). To support this position, Ingram relies upon the fact that Deere "left the premises" in March 1999 and never returned. This evidence alone does not affirmatively establish that Deere abandoned the partnership. There was evidence to the contrary. Deere testified that he had no desire to withdraw from the partnership and that he did not abandon the partnership in March 1999. Ingram also testified that Deere never stated that he was backing out on their oral agreement.

Second, Ingram alleged that Deere received "notice of the partner's expulsion." Ingram does not fully state the terms of this event of withdrawal. The statute

Dallas 2004, no pet.). Therefore, Ingram has

waived his reliance on such a defense.

reads: "the partner's expulsion *as provided in the partnership agreement.*" Tex. Rev.Civ. Stat. Ann. art. 6132b–6.01(b)(3) (Vernon Supp.2005) (emphasis added). There is no evidence in the record that the parties orally or in writing agreed that a specified event would lead to a partner's expulsion. Accordingly, Ingram's reliance on this event of withdrawal is misplaced.

In the absence of an event of withdrawal or an event requiring the winding up, the partnership continued with both Ingram and Deere as partners. Thus, under the TRPA, Deere's rights as a partner did not end in March 1999. The evidence is disputed as to when the partnership terminated. By awarding damages through the date of trial, the jury impliedly disbelieved Ingram's testimony that the partnership terminated in March 1999. As noted above, there is evidence in the record that the partnership did not terminate in March 1999. Accordingly, we conclude the evidence is legally sufficient to support the jury's award of damages through trial. We sustain Deere's second point of error.

### 2. Fiduciary Duty

In his third point of error, Deere contends the trial court erred in granting JNOV on his fiduciary duty claim. The trial court submitted questions to the jury inquiring whether a fiduciary relationship existed between Deere and Ingram; and, if so, whether Ingram breached that duty. The jury answered yes to both questions and assessed damages for the breach of fiduciary duty claim. In his second motion for JNOV, Ingram asserted that he did not owe Deere a fiduciary duty because no relationship of trust and confidence existed between himself and Deere.

A fiduciary relationship may be formal or informal. Fiduciary duties arise as a matter of law in certain formal relationships, including attorney-client and trustee relationships. *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex.2005). An informal fiduciary relationship may arise where one person trusts in and relies upon another, whether the relationship is a moral, social, domestic, or purely personal one. *Id; Schlumberger Technology Corp. v. Swanson*, 959 S.W.2d 171, 176 (Tex.1997). To impose an informal fiduciary relationship in a business transaction, a special relationship of trust and confidence must exist prior to, and separate from, the parties' agreement. *Schlumberger Tech. Corp.*, 959 S.W.2d at 177.

The following question was submitted to the jury:

Did a relationship of trust and confidence exist between [Ingram] on the one hand and [Deere] on the other hand?

a. A relationship of trust and confidence existed if [Deere] justifiably placed trust and confidence in [Ingram] to act in [Deere's] best interest. [Deere's] subjective trust and feelings alone do not justify transforming arm's length dealings into a relationship of trust and confidence.

Answer 'yes' or 'no': Yes

The evidence in this case shows that Deere and Ingram had at one time jointly treated a patient. Deere testified that he and Ingram were social friends and that they would "bump into each other" at social functions. Deere and Ingram had previously discussed forming a pain management clinic. Deere also testified that he placed confidence and trust in Ingram to treat him fairly.

The testimony shows at best Deere's subjective trust and feelings. The fact that Deere trusted Ingram or the fact that they were friends does not transform their business relationship into a fiduciary relationship. *Meyer*, 167 S.W.3d at 331; *Exxon Corp. v. Breezevale, Ltd.*, 82 S.W.3d 429, 443 (Tex.App.-Dallas 2002, pet. denied)

(fact that one businessman trusts another and relies upon him to perform a contract does not give rise to a confidential relationship). Moreover, the fact that they jointly treated a patient is evidence of nothing more than an arm's length business transaction. It is not evidence of a confidential relationship between Deere and Ingram.

Therefore, we conclude the record contains no evidence of a fiduciary relationship between Deere and Ingram. Thus, the trial court did not err in granting JNOV on Deere's fiduciary duty claim. We overrule Deere's third point of error.

### 3. Expert Testimony

In his fourth point of error, Deere contends the trial court erred in granting JNOV on the ground that it was error to admit the testimony of Deere's expert witness. In his motion for JNOV, Ingram asserted it was error to admit the expert testimony because the expert was not timely designated and his opinions were unreliable.

Kimball Parks Ramey testified as an expert witness for Deere. Although untimely, Deere designated Ramey fifteen months prior to trial. After Deere designated Ramey, the parties agreed to a continuance for the purpose of completing discovery. Ingram did not respond to Deere's request for production of documents and Deere had to file a motion to compel in an effort to obtain the requested documents. On the first day of trial, Ingram filed a pre-trial motion to exclude Ramey's testimony because Deere failed to timely designate him as an expert witness. At the hearing on the motion, the trial court gave Ingram the option of continuing the trial. Instead of continuing the trial, however, Ingram chose to depose Ramey on the evening of the first day of trial. Judge Evans determined there was good cause for the late designation and denied Ingram's motion to exclude Ramey's testimony. We conclude the record supports the Judge Evans's finding of good cause.

Ingram also asserted in his motion for JNOV that Ramey's testimony should have been excluded because his opinions were unreliable and, therefore, constituted legally insufficient evidence to support the award of damages. If an expert's opinion is based on certain assumptions about the facts, a reviewing court cannot disregard evidence showing those assumptions were unfounded. *City of Keller*, 168 S.W.3d at 813. Evidence that might be considered "some evidence" when viewed in isolation is nevertheless rendered "no evidence" when contrary evidence shows it to be incompetent. *Id.*

Ramey testified as Deere's expert witness on damages. Ramey based his opinion on the records he reviewed on three visits to the office of Ingram's accountant, Ron McClellan, and the documents produced by Ingram. Ramey did not get all the documents he requested and some of the documents were not produced until a few days before trial. In reviewing Ingram's books, Ramey noticed numerous abnormalities and questioned the integrity of the way the books were created. In making his calculations, Ramey used the figures from the clinic's tax returns. Ramey testified that the clinic's records were not in agreement with the tax returns. Ron McClellan, Ingram's accountant and expert witness, testified that to the best of his knowledge, Ramey received accurate records.

Ingram contends that Ramey's opinions are unreliable because they are based on unfounded assumptions. Specifically, Ingram points out that Ramey's calculations were based on combined revenue from both Behavioral Psychology Clinic and Rehabilitation Solutions, Inc. and that the

partnership's business related only to the Behavioral Psychology Clinic. Ramey explained that the revenues from the pain clinic were deposited into both accounts and that it was not possible to ascertain whether there was a set percentage of funds deposited into each of the two accounts. Ramey testified to irregularities in the clinic's bookkeeping practices. He made his calculations based upon the documents provided to him. Because revenues from the Behavioral Psychology Clinic were deposited into two separate accounts, he included both accounts in his calculations.

Ingram also contends Ramey's calculations are unreliable because he assumed a revenue increase of ten percent per year. Ramey testified that he chose ten percent as a conservative figure, because the clinic's records actually showed an annual increase of fifteen to twenty percent. Ramey felt a fifteen to twenty percent increase was unusually high.

Contrary to Ingram's contentions, however, we conclude that the assumptions made by Ramey did not render his opinion incompetent. Ramey used the documents provided by Ingram to calculate Deere's damages. We conclude these assumptions were not so unfounded, based on the documents provided, as to render his damages testimony legally insufficient. Judge Hartman erred in granting JNOV on this ground. We sustain Deere's fourth point of error.

### 4. Pleadings

In his fifth point of error, Deere contends Judge Hartman erred in granting JNOV on the ground that his pleadings did not support the judgment.

Ingram asserted in his second motion for JNOV that Deere's pleadings for breach of the partnership agreement did not support the jury's award for unpaid royalties. Ramey *analogized* how Ingram and Deere agreed to calculate Deere's share of the partnership income to how royalty interests are typically calculated. This testimony was not in conflict with Deere's pleadings. Moreover, McClellan, Ingram's expert and accountant, agreed with Ramey's analogy. McClellan also stated that a partner in a joint venture may have a right to a percentage of the revenues without owning any of the assets. The jury found that Ingram and Deere entered into a joint venture and awarded damages for breach of the joint venture agreement. We conclude the damages awarded were supported by Deere's pleadings. Thus, the trial court erred in granting JNOV on this ground. We sustain Deere's fifth point of error.

### 5. Attorney's Fees

In his sixth point of error, Deere contends Judge Hartman erred in granting JNOV on the issue of attorney's fees. In his second motion for JNOV, Ingram asserted that Deere was not entitled to attorney's fees because Deere's actual damages during the partnership totaled $34,249.68 and that amount had been tendered by Ingram before suit was filed. This Court has reversed Judge Hartman's December 16, 2004 judgment and reinstated the September 17, 2004 judgment for Deere on the breach of contract damages awarded by the jury through the date of trial. Accordingly, Deere is entitled to attorney's fees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (Vernon 1997). We sustain Deere's sixth point of error.

### Conclusion

We reverse the December 16, 2004 judgment and reinstate the judgment dated September 17, 2004 awarding breach of

contract damages in the amount of $2,525,437.00 plus attorney's fees.