**GLOBAL WATER GROUP, INC., Appellant,**

v.

**Robert ATCHLEY and Aspen Water, Inc., Appellee.**

No. 05–06–00709–CV.

Court of Appeals of Texas, Dallas.

Feb. 14, 2008.

Rehearing Overruled Feb. 14, 2008.

Scott E. Hayes, Vincent Moye, P.C., James A. McCorquodale, Vial Hamilton, Koch & Knox, Dallas, for Appellant.

Jackson D. Wilson, II, Christopher M. McDowell, Gordon & Rees LLP, Dallas, for Appellees.

Before Justices MOSELEY, O'NEILL, and LANG.

## OPINION

Opinion by Justice O'NEILL.

Appellant Global Water Group, Inc.'s motion for rehearing is denied. On the Court's own motion, we withdraw our earlier opinion of January 9, 2008 and vacate our judgment of that date. This is now the opinion of the court.

Global Water Group, Inc. appeals a take-nothing judgment notwithstanding the verdict (j.n.o.v.) for Robert Atchley and Aspen Water, Inc. on Global's claims for misappropriation of trade secrets and conspiracy. It also appeals a partial summary

judgment for Atchley on Global's claims for breach of a shareholder agreement. In six issues, Global argues the trial court erred in (1) granting a j.n.o.v. because there is sufficient evidence to support the jury's verdict, and (2) granting a partial summary judgment because fact issues exist regarding the shareholder agreement. For the following reasons, we affirm the trial court's judgment.

## BACKGROUND

In the 1990s, Global Water Technologies, Inc.[1] (GWT) created the first successful mobile self-powered, self-contained water purification system. It is undisputed that GWT treated this system and associated products as trade secrets and required all employees to sign confidentiality agreements. Robert Atchley was GWT's president and was familiar with its product line and had access to all of the claimed trade secrets. Atchley resigned from GWT in 1994.

In 1995, all of GWT's assets, including its trade secrets, were acquired by Global, who was then known as AMW. GWT and Global remained legally separate entities, but GWT retained no assets and ceased operating. Four years later, in 1999, Atchley began manufacturing portable self-sustained water purification systems through his company Aspen Water Inc. Global sued Aspen and Atchley claiming conspiracy and misappropriation of trade secrets.

Following a jury trial, the jury found Atchley and Aspen had misappropriated Global's trade secrets and that Global suffered one million dollars in damages based on lost profits. The particular trade secrets found to exist were (1) a formula used in a "mixed media pod" which is a

device used to remove contaminates from water, and (2) the "sequence of the process" Global used for water purification. Following the jury's verdict, Atchley and Aspen filed a motion for judgment notwithstanding the verdict (j.n.o.v.), asserting that Global failed to prove (1) it had a trade secret in its mixed media formula or the sequence of the process or (2) Atchley or Aspen used any such alleged secrets. The trial court granted Atchley and Aspen's motion and entered judgment that Global take nothing on its claims. This appeal followed.

## STANDARD OF REVIEW

■ A trial court's decision to grant a judgment notwithstanding the verdict should be affirmed if the evidence is legally insufficient to support one or more of the jury findings on issues necessary to liability. *Wal–Mart Stores, Inc. v. Miller,* 102 S.W.3d 706, 709 (Tex.2003) (per curiam); *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 227 (Tex.1990). Evidence is legally insufficient where (1) there is a complete lack of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Lochinvar Corp. v. Meyers,* 930 S.W.2d 182, 188 (Tex.App.-Dallas 1996, no writ). In a legal sufficiency review, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex.2005). The ultimate test of legal sufficiency is whether the evidence would enable reasonable and fair-minded people

---

1. Global Water Technologies and appellee Global Water Group are not legally related entities.

to reach the verdict under review, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Id.* at 827; *Deere v. Ingram,* 198 S.W.3d 96, 100 (Tex.App.-Dallas 2006, pet. granted).

## Trade Secret Protection

█ A trade secret is any formula, pattern, device or compilation of information which is used in one's business and presents an opportunity to obtain an advantage over competitors who do not know or use it. *In re Bass,* 113 S.W.3d 735, 739 (Tex. 2003); *Sharma v. Vinmar Intern., Ltd.,* 231 S.W.3d 405, 424 (Tex.App.-Hous. (14 Dist.) 2007, no pet.). Customer lists, pricing information, client information, customer preferences, buyer contacts, blueprints, market strategies, and drawings have all been recognized as trade secrets. *T–N–T Motorsports v. Hennessey Motorsports,* 965 S.W.2d 18 at 22 (Tex.App.-Houston [1st Dist.] 1998, pet. dism'd).

█ To determine whether information constitutes a trade secret, a court considers the following six factors: (1) the extent to which the information is known outside the claimant's business; (2) the extent to which the information is known by employees and others involved in the claimant's business; (3) the extent of the measures taken by the claimant to guard the secrecy of the information; (4) the value of the information to the claimant and to its competitors; (5) the amount of effort or money expended by the claimant in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *Bass,* 113 S.W.3d at 739. The party claiming a trade secret need not satisfy all six factors because trade secrets do not fit neatly into each factor every time. *Id.* at 740.

█ The mere fact that knowledge of a product or process may be acquired through inspection, experimentation, and analysis does not preclude protection from those who would secure that knowledge by unfair means. *K & G Oil Tool & Serv. Co. v. G & G Fishing Tool Serv.,* 158 Tex. 594, 314 S.W.2d 782, 788 (1958). A trade secret must nevertheless be a secret. "Secrecy" in this sense is not limited solely to confidentiality, but also requires that the information "is not generally known or readily ascertainable by independent investigation." *Trilogy Software, Inc. v. Callidus Software, Inc.,* 143 S.W.3d 452, 467 (Tex. App.-Austin 2004, pet.denied).

### Discussion

Aspen and Atchley moved for a j.n.o.v. based on their contentions (1) there was no evidence Global had a trade secret and (2) there was no evidence Atchley or Aspen used any alleged trade secret. To determine whether the trial court properly granted Global's j.n.o.v, it is necessary to briefly describe the water purification process at issue and what Global claims are its trade secrets.

Proper water purification requires three steps. First, large particles are removed by filtration, then the water is treated with a compound to remove chemicals (absorption), finally, iodine or UV treatment kills viruses or bacteria in the water (disinfection). It is not disputed that these three steps are commonly and generally known and are required for any proper water purification. What Global contends are its trade secrets are (1) the formula of the compound it used in a mixed media pod in the second "absorption" step and (2) the "sequence of the process" it used to purify water.

█ We first consider whether there is any evidence Global had a formula that constituted a trade secret. In the absorp-

tion stage of water purification, Global used a "mixed media pod," a canister containing certain substances that remove chemicals from water. Global used KDF [2] and carbon in its pod. It is undisputed that other manufacturers of water purification systems used "pods" with both carbon and KDF and there was nothing secret about either the pod or these ingredients. It is the particular ratio of KDF to carbon that Global used that it asserts is a trade secret. Global however claims no secret in any discrete formula, but rather an approximate 10:90 ratio of KDF to carbon. Global asserts this approximate formula is entitled to trade secret protection because it was different from what others in the industry were using. To show others in the industry used different ratios, Global relies on the testimony of its president Alan Weiss. According to Weiss, the manufacturer of KDF recommended using much more KDF than carbon and others in the industry used ratios "nowhere close" to the ratio Global used.

The status of the information claimed as a trade secret must be determined through a comparative evaluation of all the relevant factors, including the value, secrecy, and definiteness of the information as well as the nature of the defendant's misconduct. *Bass*, 113 S.W.3d at 739 (*quoting* RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 39 cmt. d (1995)).

We begin by noting the nature of the misconduct in this case was not particularly egregious. As discussed below, Atchley was not subject to any type of noncompetition agreement. Thus, under the facts of this case, there was no misconduct unless there was in fact a trade secret. We thus turn to the other relevant factors. To prove its formula was a trade secret, Global focuses almost exclusively on evidence that both it and (five years previously)

GWT treated the formula as a trade secret. Specifically, Global presented evidence that it guarded its formula, limited access, and required employees to sign confidentiality clauses. There is no evidence however regarding whether or not Global's efforts were successful—specifically whether or not its formula was nevertheless known outside its business.

Further, Global directs us to no evidence of the value of its formula to its business. Global suggests the formula was necessarily valuable because Global had developed the first successful self-contained water purification unit. However, there is no evidence the formula itself was related to the success of the unit. Specifically, Global directs us to no evidence the formula was in any way related to the mobility of the unit or other supposedly novel features of the unit. Weiss did testify that Global's formula removed more contaminates and performed better than anyone else's. This testimony was however largely conclusory and Weiss did not attempt to articulate or explain how Global's formula created better water or how its particular blend gave it a competitive advantage. Nor did he explain how the Global product performed differently than any other product on the market. Indeed, when asked about products that could remove contaminants from water, Weiss responded that he was not an engineer, scientist, or biochemist. Further, there is no expert testimony that the quality of Global's water was superior or that Global's process was cheaper or more efficient. Global has thus failed to point to any evidence to show its formula was valuable. Likewise, Global has not shown the formula gave it a competitive advantage.

Moreover, Global directs us to no evidence of the effort or money it took to create the formula. *Compare Water Ser-*

---

**2.** KDF is a trade name for a water purifying substance.

*vices, Inc. v. Tesco Chemicals, Inc.,* 410 F.2d 163, 165 (5th Cir.) (trade secret existed when it took four years and $18,000 to develop product). This "formula" had been used for several years and there is no evidence to suggest anyone in the market place sought, but was unable to duplicate it. *Compare id.* at 172. (trade secret existed when competitor tried, but failed, to duplicate secret before misappropriation). Indeed, it appears that if competitors were interested in determining the formula, it would not have been particularly difficult for them to have done so. The two ingredients in the pod were well known and were visibly different. In fact, Aspen presented evidence of Global's formula by ordering an alleged Global product and sending its contents to a lab for evaluation. We recognize that the mere fact that knowledge of a product may be acquired through inspection and analysis does not by itself preclude trade secret protection. Nevertheless, it is a relevant consideration in determining whether information was actually a secret. *See Bass,* 113 S.W.3d at 739. (in determining trade secret, court considers the ease or difficulty with which the information could be duplicated by others).

Finally, the imprecise nature of the information weighs heavily against it being a trade secret. There is no discrete secret formula at issue, but only an approximate mix of two well-known substances commonly used together. Given the imprecise nature of formula, we question what information Atchley and Aspen should be prohibited from using. For example, should they be prohibited from using a 20:80 ratio, 30:70, 40:60? It thus becomes apparent, it would be difficult to protect such a "formula," without prohibiting fair competition.

▪ That no discrete formula is claimed also raises a problem in determining whether Aspen or Atchley actually used the trade secret. Actual use or disclosure of the trade secret is a required element of the tort. Use of the trade secret means commercial use by which the offending party seeks to profit from the use of the secret. *See Metallurgical Indus. Inc. v. Fourtek, Inc.,* 790 F.2d 1195, 1205 (5th Cir.1986); *Atlantic Richfield Co. v. Misty Products, Inc.,* 820 S.W.2d 414, 422 (Tex. App.-Hous. (14 Dist.) 1991, writ denied). Evidence of a similar product may give rise to an inference of actual use under certain circumstances. *See Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.,* 285 F.3d 1353, 1361 (Fed.Cir.2002).

▪ Global does not contend that Aspen used the same formula, but only that its formula was similar. While two products need not be identical for an inference of use to arise, we nevertheless conclude that similarity under these circumstances is not sufficient to raise such an inference. The similarity lie in the ratio of only two of the components of the mixed media pod, KDF and carbon. As noted above, it is not disputed that others in the industry used canisters with KDF and carbon. Aspen allegedly "used" Global's trade secret because its product, like Global's, used much more carbon than KDF. While the two products were similar in this regard, there were also differences in the contents of the mixed media pods. For example, Aspen's product contained "separator pads" that kept the KDF and carbon separate. Global's product on the other hand used another purifying substance, PM 1000, as well as gravel. In light of these differences, and the fact that the similarity lie only in the percentages of two commonly used ingredients, no inference of use arises. We conclude there is legally insufficient evidence to show misappropriation of the formula of Global's mixed media pod.

■ The jury also found Global possessed a trade secret in the "sequence of the process" in its water purifiers. The evidence shows that Global uses a three-step water purification process: filtration, absorption, and disinfection. Global does not dispute that this three-step process is not a trade secret and is used in virtually all water purification systems. Global has not identified or described any particular "sequence" that constitutes a trade secret. Global directs us to no evidence explaining how its "sequence" is different or unique or produces a superior, cheaper, or efficient result or even what its sequence is. Because Global has not identified any "sequence of the process" that it contends was a trade secret, we cannot conclude the trial court erred in granting a j.n.o.v. on this claim.

## PARTIAL SUMMARY JUDGMENT

■ In 1991, Atchley entered into a shareholder agreement with the other shareholders of GWT. As part of that agreement, Atchley and the other GWT shareholders agreed not to engage in any business that competed with GWT for a period of three years after terminating their association with GWT. Neither GWT or Global was a party to this agreement. Nevertheless Global sued Atchley for violating the shareholder agreement. Atchley moved for summary judgment on the shareholder agreement claim because (1) the covenant not to compete was unreasonable and thus enforceable, (2) Atchley fully performed his obligations under the agreement, and (3) Global had no standing because it was not a party to the agreement.

The standard of review for a traditional summary judgment is well known. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). Atchley had the burden to demonstrate that no genuine issues of material fact existed and he was entitled to judgment as a matter of law. *See id.* at 548–49.

After reviewing the agreement under the undisputed facts, we conclude the trial court properly granted Atchley's motion for summary judgment. Global sued Atchley because it contends the shareholder agreement prohibits Atchley from competing against Global. However, the clear terms of the shareholder agreement only prohibited Atchley from competing against GWT. GWT and Global are distinct corporate entities. Global acquired GWT's assets, but the two corporations were not merged and remained legally distinct.

Further, the undisputed summary judgement evidence established that Atchley did not reenter the water purification business until more than five years after resigning from GWT and more than four years after GWT sold all of its assets and ceased doing business. Global nevertheless asserts the covenant not compete remains in effect, despite its three year limitation, because Atchley still owns stock in the defunct GWT. According to Global's position, the noncompete will run indefinitely if Atchley is unable to divest himself of the valueless stock. In essence, Global seeks to stand in GWT's shoes for purposes of the benefits under the agreement, but not for purposes of starting the three year clock. Global cannot have it both ways. Atchley's relationship with GWT effectively terminated when GWT sold all of its assets and ceased doing business. Because Atchley waited more than three years after this date, he did not violate the noncompetition clause of the shareholder agreement. We conclude Global has not shown the trial court erred in granting Atchley's motion for summary judgment on that claim.

Global also asserts the trial court erred in granting a partial summary judgment on its claim that Atchley breached his fiduciary duty to Global. Although Atchley moved for summary judgment on Global's breach of fiduciary duty claim, the trial court did not grant summary judgment on that claim. Thus, this issue presents nothing to review.

We affirm the trial court's judgment.