**Clifford P. WAGNER, Jr., Appellant**

v.

**Hans E. EDLUND and Jan K. Edlund, Appellees.**

**No. 05–06–00477–CV.**

Court of Appeals of Texas, Dallas.

July 30, 2007.

Alan S. Notinger, Glast, Phillips & Murray, P.C., Dallas, for Appellant.

Walter C. Davis, Irving, for Appellee.

Before Justices MORRIS, FRANCIS, and MAZZANT.

## OPINION

Opinion by Justice MAZZANT.

Clifford P. Wagner, Jr., brings this appeal from a modified judgment entered in favor of Hans and Jan Edlund. In his first two issues, Wagner challenges the legal and factual sufficiency of the evidence supporting the attorney's fees and damages awarded in the judgment. Wagner's third issue claims the trial court erred in denying Wagner's motion to modify judgment and alternative motion for new trial[1]. For the reasons stated below, we conclude Wagner failed to conclusively prove his attorney's fees and the evidence is factually insufficient to support the amounts found by the jury. We also conclude the jury's findings on damages are supported by legally and factually sufficient evidence. We therefore affirm the judgment in part and reverse and remand in part.

## BACKGROUND

Clifford P. Wagner and Hans and Jan Edlund owned adjoining townhouses that share a common wall in Dallas, Texas. Both townhouses are part of the same development and are governed by restrictive covenants recorded in the Dallas County deed records. In April and May of 2003, Wagner's property and the common wall sustained damage when water penetrated through the common wall and entered the interior of Wagner's property. At the time of the water penetration, Wagner's townhouse was being leased to Jack and Louise Reese, who were planning to

---

1. Although Wagner identifies seven issues in the "issues presented" portion of the brief, the brief discusses only three issues. Issues not supported by argument or authorities are waived. See Tex.R.App. P. 38.1; *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex.1994); *Devine v. Dallas County*, 130 S.W.3d 512, 513–14 (Tex.App.-Dallas 2004, no pet.); *Sullivan v. Bickel & Brewer*, 943 S.W.2d 477, 486 (Tex.App.-Dallas 1995, writ denied).

purchase it for the price of $215,000. Because of the water damage and delays in making repairs to the property, they decided not to purchase the townhouse.

Wagner sued the Edlunds for negligence and breach of the restrictive covenants, arguing that the water damage to his townhouse occurred because the Edlunds did not properly maintain the roofing, flashing, gutters, and downspouts on their property or the grading and drainage. Wagner's alleged damages included the costs of repairing and restoring the wall; expenses and costs resulting from the lost sale of Wagner's property; and the difference, if any, in the property's market value before the water damage and after the necessary repairs were made. In addition to damages, he also sought reasonable and necessary attorney's fees pursuant to sections 5.006 of the property code[2] and 38.001 of the civil practice and remedies code.[3]

Questions were submitted to the jury asking it to determine whether the negligence of the Edlunds, if any, "proximately caused the occurrence in question" and whether the Edlunds failed to comply with the restrictive covenants. The jury charge also included questions on reasonable and necessary attorney's fees and three categories of damages: reasonable and necessary repair and restoration expenses; reasonable and necessary expenses and other costs of holding and attempting to sell Wagner's property after the Reeses moved out; and the difference, if any, in the property's market value before the occurrence and the property's market value after the necessary repairs were made.

The jury found the Edlunds failed to comply with the restrictive covenants and were liable for damages and attorney's fees. The jury answered "no" to the negligence question. The jury answered the three damages questions with $3,520 for repair and restoration expenses, "zero" for holding expenses, and "zero" for the difference in market value. The jury initially answered "zero" to the attorney's fees question but the trial court sent the question back to the jury for further deliberation. The jury's subsequent answer concerning reasonable and necessary attorney's fees was $500 for trial, $150 for an appeal to the court of appeals, $75 for a petition for review in the Supreme Court of Texas and $75 after a petition for review was granted.

After the trial, Wagner filed a motion for judgment and motion for partial judgment notwithstanding the verdict. In those motions, Wagner requested (among other things) that the trial court disregard the jury's responses regarding the amounts of attorney's fees and the amount of damages and instead enter judgment for the amounts of attorney's fees and damages established by the evidence as a matter of law. The trial court granted the motion in part and denied it in part. The trial court did not disregard any of the jury's responses concerning damages or the trial attorney's fees and made only a

---

2. Section 5.006(a) of the property code provides, "In an action based on breach of a restrictive covenant pertaining to real property, the court shall allow to a prevailing party who asserted the action reasonable attorney's fees in addition to the party's costs and claim." TEX. PROP.CODE ANN. § 5.006(a) (Vernon 2004); *Mitchell v. LaFlamme*, 60 S.W.3d 123, 130 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

3. Section 38.001(8) of the civil practice and remedies code provides that a party may recover reasonable attorney's fees when it prevails on a contract claim. TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 1997); *see Hassell Constr. Co. v. Stature Commercial Co.*, 162 S.W.3d 664, 668 (Tex.App.-Houston [14th Dist.] 2005, no pet.).

partial adjustment to the appellate attorney's fees. In the final judgment entered by the trial court, Wagner was awarded $3,520 in damages, $500 for attorney's fees at trial, $5,000 for attorney's fees at the court of appeals, and $4,000 and $3,000 for attorney's fees at the Supreme Court of Texas. Wagner subsequently filed a motion to modify judgment and alternative motion for new trial, which was overruled by operation of law.

## DISCUSSION

### Standards of Review

A party challenging the legal sufficiency of an adverse finding on an issue on which that party had the burden of proof at trial must demonstrate on appeal that the evidence conclusively established, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001); *Dallas County Constable Precinct No. 5 v. Garden City Boxing Club, Inc.*, 219 S.W.3d 613, 616 (Tex.App.-Dallas 2007, no pet.). In reviewing a matter of law challenge, we first examine the record for evidence that supports the adverse finding, while ignoring all evidence to the contrary. *Dow Chem.*, 46 S.W.3d at 241 (citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989)). We indulge every reasonable inference to support the finding, crediting favorable evidence if a reasonable jury could and disregarding contrary evidence unless a reasonable jury could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 822 (Tex.2005); *Dupree*, 219 S.W.3d at 616; *Deere v. Ingram*, 198 S.W.3d 96, 100 (Tex. App.-Dallas 2006, pet. filed). If there is no evidence to support the adverse finding, we then examine the entire record to determine if the contrary proposition is established as a matter of law. *Dow Chem.*, 46 S.W.3d at 241 (citing *Sterner*, 767 S.W.2d at 690). We sustain the point of error only if the contrary proposition is conclusively established. *Dow Chem.*, 46 S.W.3d at 241. The test for legal sufficiency is the same for directed verdicts, judgments notwithstanding the verdict (JNOV), and appellate no-evidence review. *City of Keller*, 168 S.W.3d at 823.

In reviewing a factual sufficiency challenge to a jury finding on an issue on which the appellant had the burden of proof, the appellant must show that "the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem.*, 46 S.W.3d at 242; *Recognition Communications, Inc. v. American Auto. Ass'n, Inc.*, 154 S.W.3d 878, 889 (Tex.App.-Dallas 2005, pet. denied). The court of appeals must consider and weigh all of the evidence and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Recognition Communications*, 154 S.W.3d at 889. The fact-finder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id.* The fact-finder may believe one witness and disbelieve another and resolve inconsistencies in testimony. *Id.* When enough evidence is before the fact-finder that reasonable minds could differ on the meaning of the evidence or the inferences and conclusions to be drawn from the evidence, we may not substitute our judgment for that of the fact-finder. *Id.* If the evidence is factually insufficient as opposed to legally insufficient, the trial court may not grant a JNOV and is limited to granting a motion for new trial. *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 594 (Tex.1986); *Cullins v. Foster*, 171 S.W.3d 521, 537 (Tex.App.-Houston [14th Dist.] 2005, pet. denied).

When reversing a jury verdict for factual sufficiency, the Texas Supreme Court requires that we "detail the evidence rele-

vant to the issue in consideration and clearly state why the jury's finding is factually insufficient.... Further, those courts, in their opinions, should state in what regard the contrary evidence outweighs the evidence in support of the verdict." *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); *see also Gonzalez v. McAllen Med. Ctr., Inc.*, 195 S.W.3d 680, 681 (Tex.2006) (quoting *Pool* ).

*Attorney's Fees*

In his first issue, Wagner argues the trial court erred in failing to award the proper amount of attorney's fees. He claims the judgment entered by the trial court is erroneous as a matter of law and requests this Court to render judgment for attorney's fees in the amounts to which his trial counsel testified, i.e., $25,000 for services through trial, $15,000 for the current appeal, $7,500 if a petition for review is filed, and $7,500 if the petition is granted.

The burden of proof was on Wagner to establish his reasonable and necessary attorney's fees. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex.1991); *Vincent v. Bank of Am., N.A.*, 109 S.W.3d 856, 868 (Tex.App.-Dallas 2003, pet. denied). Citing *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880 (Tex.1990) (per curiam) and *Recognition Communications,* Wagner argues the testimony of his trial counsel, which was the only trial testimony on attorney's fees, proved his attorney's fees as a matter of law because there was no contradictory or controverting evidence. In *Recognition Communications,* we rendered judgment that appellant was entitled to $75,764 in attorney's fees on a $10,000 damage claim despite the jury's "zero" attorney's fees award because the attorney's testimony was uncontroverted. *Recognition Communications,* 154 S.W.3d at 890–91. In *Ragsdale,* the court stated the testimony of an interested witness that is not contradicted by any other witness or

attendant circumstances and is clear, direct, positive and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon should be taken as true as a matter of law. *Ragsdale,* 801 S.W.2d at 882. This is especially true where the opposing party had "the means and opportunity of disproving the testimony" and failed to do so. *Id.* The *Ragsdale* court, however, also stated that it did "not mean to imply that in every case when uncontradicted testimony is offered it mandates an award of the amount claimed." *Id.* "For example," the court explained, "even though the evidence might be uncontradicted, if it is unreasonable, incredible, or its belief is questionable, then such evidence would only raise a fact issue to be determined by the trier of fact." *Id.*

The Edlunds argue they contested the testimony of Wagner's trial counsel through cross-examination regarding the segregation of attorney's fees for breach of contract from the attorney's fees for Wagner's negligence cause of action. Wagner responds that the Edlunds waived this argument because they did not object to the broad-form attorney's fees question submitted to the jury, which asked the jurors to determine Wagner's attorney's fees "in connection with this case." Wagner cites the general rule that if no objection is made to a failure to segregate attorney's fees either at the time evidence of attorney's fees is presented or to the jury charge, the error is waived. *Green Int'l, Inc. v. Solis,* 951 S.W.2d 384, 389 (Tex. 1997); *Hruska v. First State Bank,* 747 S.W.2d 783, 785 (Tex.1988); *see also Cullins,* 171 S.W.3d at 536–37 (cross-appellees waived complaint that trial court erred in awarding attorney's fees to cross-appellants because they did not object at trial to expert's testimony or to jury instructions on grounds of failure to segregate). In these cases, however, one party was argu-

ing the other should not recover *any* attorney's fees because of a failure to segregate recoverable from non-recoverable fees. Here, by contrast, the Edlunds are not arguing Wagner is not entitled to recover attorney's fees. The issue is whether Wagner proved his attorney's fees as a matter of law.

■ As we mentioned before, to prevail on a legal sufficiency challenge to a question on which he had the burden of proof, Wagner must show (1) there was no evidence to support the jury's finding and (2) the evidence established a contrary proposition as a matter of law. *Dow Chem.*, 46 S.W.3d at 241. Beginning with the first question, we conclude there is no evidence to support the jury's findings regarding attorney's fees. At trial, Wagner's counsel testified his "usual and customary hourly rate" was $225. He estimated he would spend "a little bit under 110 hours" working on the case through the end of the trial, spread over a period of thirteen or fourteen months. He testified the following amounts were reasonable and necessary attorney's fees: $25,000 at the trial court level, $15,000 at the court of appeals, $7,500 on filing a petition for review in the Supreme Court of Texas, and $7,500 if the petition for review is granted. Wagner's counsel was the only witness at trial on attorney's fees and there is no contradictory testimony in the record concerning a reasonable hourly rate or the amount of attorney's fees from any other witness.

■ Turning to the second part of the analysis, we consider whether Wagner conclusively established a contrary proposition. Although the Edlunds did not object to Wagner's counsel's testimony or the jury charge on the grounds that counsel failed to segregate the permissible fees from those not allowed, the Edlunds cross-examined Wagner's counsel on that issue. Counsel for the Edlunds asked Wagner's counsel whether he could separate the work he had done regarding the alleged water damages to the property from his efforts to enforce the restrictive covenants. Wagner's counsel replied, "I cannot separate the work I've done relative to the negligence claim from the work I've done relative to the restrictive covenant claim." The Edlunds' counsel also asked Wagner's counsel whether "the amount of money that you say is reasonable and necessary in this case to prove up the negligence side of your claim is the same amount of money that it takes to prove up the remainder of your claim?" Wagner's counsel said "the entire amount cannot be split because of the nature of what's involved in this case." He also said his redacted billing records did not separate the time he spent working on the various claims in the lawsuit.

We conclude the testimony of Wagner's counsel does not rise to the level that would permit us to award attorney's fees as a matter of law. There is evidence in the record to support the jury awarding an amount less than $25,000 for trial attorney's fees because the jury could have taken into account the testimony of Wagner's attorney that he could not segregate attorney's fees for the negligence claim from the attorney's fees for the breach of contract cause of action. The Edlunds' attorney also raised the segregation issue during closing argument by asking the jury to consider a lesser amount of attorney's fees. Because there is no contrary position from the jury's findings established as a matter of law that would enable us to render judgment in his favor, Wagner's legal sufficiency challenge fails.

■ In the alternative, Wagner argues he is entitled to a new trial because the jury's responses and the attorney's fees awarded in the judgment are against the great weight and preponderance of the evidence. After reviewing the record, we

conclude the evidence in this case is factually insufficient to support the jury's verdict of $500 for trial attorney's fees, $150 for an appeal to the court of appeals, $75 for a petition for review in the Supreme Court of Texas, and $75 if the petition for review is granted. The jury's verdict on trial attorney's fees is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. As the Fourteenth Court of Appeals concluded under similar circumstances in *Cullins*, although the Edlunds contested Wagner's attorney's testimony through cross-examination, they did not present any evidence casting doubt on the reasonableness of the $225 hourly fee or the amounts of time Wagner's attorney invested in the case. *See Cullins*, 171 S.W.3d at 539–40. At the rate identified by Wagner's trial counsel, the jury's award of $500 reimburses him for slightly more than two hours of work. The fees awarded by the jury for an appeal to this Court and review in the Texas Supreme Court are also contrary to the overwhelming weight of the evidence.

■ The trial court also erred in rendering judgment of $5,000 for attorney's fees at the court of appeals, $4,000 for a petition for review in the Supreme Court of Texas, and $3,000 if the petition for review is granted. The Texas Supreme Court has noted that "[a] trial court may not disregard a jury's answer because it is against the great weight and preponderance of the evidence. In such a situation, the trial court may only grant a new trial." *See Alm*, 717 S.W.2d at 594. We therefore sustain Wagner's first issue to the extent he seeks a remand for a new trial on the issue of attorney's fees.

*Damages*

■ In his second issue, Wagner claims the amount of damages awarded by the jury is erroneous and larger sums are conclusively established. Wagner argues we should reverse the trial court's judgment and render judgment for the damage amounts established as a matter of law. In the alternative, Wagner argues he is entitled to a new trial on damages because the jury's responses are against the great weight and preponderance of the evidence.

Question three of the court's charge asked, "What sum of money, if now paid in cash, would fairly and reasonably compensate Clifford P. Wagner, Jr. for his damages, if any?" The jurors were asked to consider three elements of damages "and none other." Question 3A asked the jury to consider the "[r]easonable and necessary repair and restoration expenses." In response, the jury answered $3,520. Question 3B asked the jury to consider the "[r]easonable and necessary expenses and other costs of holding and attempting to sell [Wagner's] property after August, 2003." The jury answered "zero." Question 3C of the jury charge asked the jury to consider "[t]he difference, if any, in the market value of [Wagner's] property immediately before the occurrence in question and immediately after the necessary repairs in question were made." The jury again answered "zero."

Wagner claims the evidence establishes that the damage amount under question 3A was $12,981.94. Regarding the repair and restoration expenses, the evidence includes an itemized list of $12,981.94 in total "water damage expenses" for Wagner's property and a stipulation that each of the listed expenses "were charged to and paid by Wagner" and were "reasonable and necessary amounts." The listed expenses include charges for painting and drywall, "[w]ater leak remediation from the leaking wall," engineering analysis and recommendations, "[m]old remediation," "clean up before repair," and replacement of the living room carpet. Article seven of the

restrictive covenants provides that reasonable repair and maintenance costs of the party wall are to be "shared by the Owners who make use of the wall in proportion to such use." In addition to incorporating general rules of law regarding party walls, article seven also provides for liability for property damage due to negligent and willful acts or omissions, but the jury did not find negligent conduct in this case. The covenants do not require either party to shoulder the entire cost of repairing and maintaining the party wall.

There was evidence only part of the wall is common to both townhouses. One section of the wall is located between the interior of the two townhouses, but another section extends into the Edlunds' backyard, i.e., the Edlunds' backyard is on one side of the wall and Wagner's living room is on the other side. Wagner's listed expenses do not separate the repair and restoration costs for the different sections of the wall. The jury reviewed the restrictive covenants and apportioned what it considered reasonable and necessary costs of repair based on the proportion of the use of the wall. The jury awarded $3,520 for reasonable and necessary repair expenses, and it was within their authority to do so as the trier of fact. After reviewing the record under the appropriate standards of review, we conclude there is legally and factually sufficient evidence to support the jury's finding.

█ Wagner also argues the jury's "zero" findings in questions 3B and 3C of the charge are not supported by the evidence. He claims the evidence conclusively establishes that his "holding" costs were $10,990 and "the difference, if any, in the market value" of the property was $23,500. Regarding question 3B, the evidence includes an itemized list of expenses allegedly incurred by Wagner for maintaining the vacant property between the time the Reeses moved out on September 1, 2003 and the sale of the property on July 30, 2004. These expenses include property taxes, property insurance, utilities, homeowners' association dues, and cleaning and repair costs. He testified these were "[o]rdinary expenses that we would all have as homeowners." He also testified that the water damage occurred in April and May of 2003, but he did not complete the repairs of the townhouse until August 2003. The jury, however, could have also concluded, taking into account Wagner's previous unsuccessful effort to sell the property and the delay in completing repairs, that the "holding" costs were not reasonable. The jury's finding is supported by legally and factually sufficient evidence.

█ Turning to question 3C, Jack Reese acknowledged that he and his wife were "ready to proceed with the purchase of the Wagner property" in April 2003 for $215,000, but the flooding through the common wall and delays in making repairs dissuaded them from purchasing the townhouse. After the Reeses moved out, Wagner placed the townhouse on the market for $215,000 but subsequently agreed to sell it for $191,500. The difference between the $215,000 sale price the Reeses claim they would have paid for the property and the final selling price of $191,500 is $23,500. According to the 2003 Dallas County Tax Statement, however, the townhouse had an appraised "market value" of $187,580. When asked about this tax appraisal, Wagner said he believed the property was worth far more. He acknowledged he did not challenge the appraisal. Prior to leasing the townhouse to the Reeses, Wagner had placed it on the market for an initial listing price above $215,000 but it failed to sell despite being on the market for more than eight months.

■ Our review of the evidence persuades us the jury's "zero" finding in question 3C of the charge is supported by legally and factually sufficient evidence. Question 3C asked the jury to determine the difference, if any, in the property's market value "immediately before the occurrence in question and immediately after the necessary repairs in question were made." It did not ask the jury to determine lost profits from a lost sale.[4] When the appraised market value is compared to the 2004 sale price of $191,500, it supports, along with other evidence in the record, the jury's "zero" finding in response to question 3C. Accordingly, we overrule Wagner's second issue.

*Motion to Modify Judgment and Alternative Motion for New Trial*

In his third issue, Wagner argues the trial court erred in denying his motion to modify judgment and alternative motion for new trial. In this motion, Wagner argued the jury's responses to questions 3A, 3B, and 3C were not supported by the evidence and were against the great weight and preponderance of the evidence. He also argued the evidence conclusively proved the amounts of reasonable attorney's fees and that the jury's responses were against the great weight and prepon-

derance of the evidence. We have already concluded the jury's verdict on attorney's fees is contrary to the overwhelming weight of the evidence and the trial court erred in rendering judgment for Wagner's appellate attorney's fees. To the extent Wagner is arguing the trial court erred in failing to grant a new trial concerning damages, we conclude the trial court did not abuse its discretion in denying Wagner's motion to modify judgment or motion for new trial.

*Conclusion*

Having determined Wagner failed to prove attorney's fees as a matter of law but the amounts found by the jury and modified by the trial court are against the great weight and preponderance of the evidence, we sustain Wagner's first issue in part and overrule it in part. We reverse that portion of the judgment awarding Wagner attorney's fees and remand Wagner's claim for attorney's fees to the trial court for further proceedings. The remainder of the judgment is affirmed.

---

4. Wagner's proposed charge included a fourth element of damages for "Lost profit, if any, on [sic] lost sale of Plaintiff's property," but the trial court refused to include this language in question three of the charge. Under his second issue, Wagner argues in the alternative that if "the failure to submit the jury question was in some way material, ... the trial court's failure to submit the question was error." Because this contention is not supported with reference to appropriate argument or relevant legal authorities, however, we will not address it. *See* TEX.R.APP. P. 38.1; *Fredonia State Bank,* 881 S.W.2d at 284; *Devine,* 130 S.W.3d at 513–14; *Sullivan,* 943 S.W.2d at 486.