

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00539-CV

Chris **LINGLE**,
Appellant

v.

**SAGE ARCHITECTURE, INC.**,
Appellee

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2022-CI-18188
Honorable Laura Salinas, Judge Presiding

Opinion by:  Irene Rios, Justice

Sitting:  Irene Rios, Justice
H. Todd McCray, Justice
Velia J. Meza, Justice

Delivered and Filed: October 22, 2025

AFFIRMED

In one issue, appellant Chris Lingle ("Lingle") appeals the default judgment rendered against him claiming the trial court failed to modify its final judgment to conform to the pleadings after appellee Sage Architecture, Inc. ("Sage") nonsuited the remaining defendants Sarah Lingle ("Sarah") and her company Aura Consulting LLP ("Aura"). Specifically, Lingle argues that because Sage did not sue him individually for committing a tort when it sued him for civil conspiracy, alleging he conspired with Sarah and Aura in misappropriating funds from Sage,

Sage's subsequent nonsuit of Sarah and Aura required the trial court to modify the default judgment and render a take nothing judgment. We disagree and affirm the trial court's final judgment awarding Sage $418,816.72 in damages as reflected in the trial court's default judgment against Lingle.

## BACKGROUND

Sarah served as Sage's office manager/bookkeeper from November 2017 through the summer of 2022. In February 2019, Sarah allegedly incorporated and organized a limited liability company, Aura, in which Sarah was its sole member and owner. Sarah married Lingle in October 2020.

While serving as Sage's bookkeeper, Sarah had access to Sage's bank, debit, and credit card accounts. Soon after Sarah left Sage's employ, Sage discovered Sarah misappropriated funds from Sage benefiting herself as well as her marital estate. Sage alleged Sarah stole funds by using its debit card to pay for various things, including her mortgage, car loan notes, personal credit card accounts, and for numerous goods and services. Sage also alleged Sarah forged several checks by issuing duplicate payroll checks to herself, paying Aura for consulting work, and issuing checks to other Sage employees and then endorsing them to herself. Sage discovered a total of $1,675,266.88 in unauthorized charges that Sage paid on Sarah's behalf. Sage also contended Lingle knew about and was complicit in Sarah's misappropriation of funds and benefited from Sarah's theft.

On September 16, 2022, Sage filed its original petition against Sarah, Lingle, and Aura. Sage alleged Sarah, individually and on behalf of Aura, committed violations of the Texas Theft Liability Act against Sage for her and Lingle's benefit. Sage additionally asserted Sarah committed fraud by non-disclosure and breached her fiduciary duty to Sage. With respect to Lingle, Sage

alleged Sarah conspired with both Lingle and Aura to steal at least $1,675,266.88 from Sage, and Lingle and Aura participated in receiving and spending Sage's stolen funds and covering up Sarah's conduct. Sage attached affidavits from its current bookkeeper, one of its owners and principals, and one of the attorneys representing Sage in the lawsuit, all in support of Sage's allegations in its petition.

After obtaining the trial court's permission for alternative service under rule 106 of the Texas Rules of Civil Procedure, Sage served Sarah, Lingle, and Aura. By order granting Sage an extension of a former temporary injunction and setting the case for trial on the merits, the trial court found service was effectuated on Sarah, Lingle, and Aura by alternative service on September 23, 2022. The trial court also found that on September 26, 2022, returns of service for all defendants were filed. Sage filed its first amended petition on November 8, 2022, and its second amended petition on November 9, 2022.

Thereafter, on November 10, 2022, Sage moved for entry of a default judgment against Lingle. Sage contended in its motion for default judgment that Lingle conspired with Sarah to misappropriate funds from Sage in the amount of $1,675,266.88. Based on Lingle's involvement, Sage requested the trial court sign a default judgment against Lingle for $418, 816.72. The trial court rendered the requested default judgment against Lingle on November 10, 2022, concluding Sage's material allegations were deemed admitted by Lingle and awarding Sage damages in the amount of $418,816.72.

Over a year and half later, Lingle and Sarah filed their original answers. In April and May 2024, Lingle filed a motion and a supplement to his motion for new trial and to set aside the interlocutory default judgment. Lingle also filed an objection to proper notice and service of Sage's second amended petition, on which the trial court granted Sage's request for a default judgment

against him. On May 7, 2024, the trial court overruled Lingle's objection to proper service and notice of Sage's second amended petition and denied Lingle's motion for new trial and to set aside the default judgment.

On May 20, 2024, Sage filed its notice of nonsuit without prejudice against Sarah and Aura. In response, on June 7, 2024, Lingle filed a motion to enter final judgment, modify the judgment to conform with Sage's pleadings, and for a new trial. On July 23, 2024, and prior to ruling on Lingle's motion, the trial court granted Sage's voluntary nonsuit of Sarah and Aura without prejudice. Soon thereafter, the trial court set forth in its August 2, 2024 order the applicable dates concerning: the default judgment against Lingle, the trial court's May 7, 2024 denial of Lingle's objection to notice and service and motion for new trial, and the trial court's order granting Sage's nonsuit of Sarah and Aura. The trial court also denied Lingle's motion to modify the judgment to conform to Sage's pleadings and motion for new trial.

Lingle filed his notice of appeal on August 19, 2024, and this appeal ensued.

## LINGLE'S APPELLATE ARGUMENT

Lingle contends that civil conspiracy is a derivative claim, and thus when Sage nonsuited Sarah and Aura, it dismissed its underlying tort claims. Consequently, Lingle contends the interlocutory default judgment is not an enforceable final judgment because his liability for engaging in civil conspiracy is no longer supported by an underlying tort. Relying on Texas Rules of Civil Procedure 301, Lingle argues the trial court erred by not modifying the default judgment to a take nothing judgment because the default judgment did not conform to Sage's pleadings once it allegedly dismissed its tort claims by nonsuiting Sarah and Aura. Lingle argues Sage's pleadings then only asserted a civil conspiracy derivative claim against him. *See* TEX. R. CIV. P. 301 ("The judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict,

if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity.").

## STANDARD OF REVIEW

The trial court denied both Lingle's motion to modify the judgment to conform to Sage's pleadings and his motion for new trial. Lingle's appellate brief focuses on the trial court's alleged failure to modify the default judgment against Lingle. Nonetheless, whether reviewing a trial court's ruling on a motion to modify the judgment or motion for new trial, we review those rulings for an abuse of discretion. *See Wagner v. Edlund*, 229 S.W.3d 870, 879 (Tex. App.—Dallas 2007, pet. denied) (concluding the trial court did not abuse its discretion in denying motion to modify judgment or motion for new trial); *see also In re Marriage of Guerra*, No. 13-21-00377-CV, 2022 WL 16842086, at *9 (Tex. App.—Corpus Christi–Edinburg Nov. 10, 2022, pet. denied) ("We review a trial court's decision to grant or deny a post-judgment motion that seeks a substantive change in the existing judgment for an abuse of discretion."). Thus, we employ an abuse of discretion standard to determine whether the trial court erred in not modifying the default judgment.

## JUDGMENT CONFORMING TO PLEADINGS

A court's jurisdiction to render judgment is invoked by the pleadings, and a judgment unsupported by pleadings is void. *See Maswoswe v. Nelson*, 327 S.W.3d 889, 893–94 (Tex. App.—Beaumont 2010, no pet.) (citing *In re S.A.A.*, 279 S.W.3d 853, 856 (Tex. App.—Dallas 2009, no pet.)); *see also Lynch v. Lynch*, 540 S.W.3d 107, 135 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). Therefore, a trial court's judgment must conform to the pleadings. *See* TEX. R. CIV. P. 301; *see, e.g., Mapco, Inc. v. Carter*, 817 S.W.2d 686, 688 (Tex. 1991); *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983). "This rule is a specific application of the more general

principle that a party may not be granted relief in the absence of pleadings to support that relief, unless the request for relief is tried by consent—a situation that cannot occur in the context of a default judgment." *In re Marriage of Day*, 497 S.W.3d 87, 90 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (citing *Stoner v. Thompson*, 578 S.W.2d 679, 682 (Tex. 1979)).

A. *Default Judgments*

"[O]nce a default judgment is taken, all factual allegations contained in the petition, except the amount of damages, are deemed admitted." *Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671 (Tex. 2008) (citing *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992)); *see also Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 183 (Tex. 2012) ("[T]he non-answering party in a no-answer default judgment is said to have admitted both the truth of facts set out in the petition and the defendant's liability on any cause of action properly alleged by those facts."). Having failed to timely answer and appear in this suit, Lingle is deemed to have admitted the truth of the facts set out in Sage's petition as well as his liability on all causes of action properly alleged in Sage's petition. *See Paradigm Oil*, 372 S.W.3d at 183.

B. *Civil Conspiracy*

Civil conspiracy is a derivative tort, "meaning it depends on some underlying tort or other illegal act." *Agar Corp., Inc., v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 140–41 (Tex. 2019). A derivative tort like civil conspiracy is "connected to the underlying tort and survives or fails alongside it." *Id.* at 141. "Civil conspiracy depends entirely on the injury caused by the underlying tort; the injury is the damage from the underlying wrong, not the conspiracy itself." *Id.* Thus, an underlying tort must be alleged to support an allegation of civil conspiracy. *See id.*

While "civil conspiracy is not a stand-alone tort[,]" the tortfeasor does not have to be sued in the same suit with the conspirators." *Klinek v. LuxeYard, Inc.*, 596 S.W.3d 437, 447 (Tex.

App.—Houston [14th Dist.] 2020, pet. denied). Rather, a conspirator may be held liable for civil conspiracy even when the conspirator is the only defendant in the lawsuit. *See id.* at 447–48. In an analogous case to the case at bar, a sister court of appeals affirmed a judgment in favor of an employer who sued an employee's widow for claims that included conspiring in the employee's theft from his employer when he breached his fiduciary duty to his employer. *See Paschal v. Great W. Drilling, Ltd.*, 215 S.W.3d 437, 442–43 (Tex. App.—Eastland 2006, pet. denied). The widow argued on appeal that she should not be assessed damages for her late husband's breach of fiduciary duty because the damages were "based upon the conduct of a non-party." *See id.* at 451. The *Paschal* court disagreed, stating the damage question was predicated on a finding that the widow participated in a conspiracy that damaged the employer, and "[o]nce a conspiracy is proven, each conspirator is responsible for all acts done by any of the conspirators in furtherance of the conspiracy." *Id.*

Moreover, "a party may prosecute consecutive suits against different defendants for a single indivisible injury. This is true regardless of whether the various defendants are joint tortfeasors." *Klinek*, 596 S.W.3d at 447. "The plaintiff may even bring the second suit after the first case settles." *Id.* at 448 (citing *First Title Co. of Waco v. Garrett*, 860 S.W.2d 74, 76, 79 (Tex. 1993)). Therefore, Sage's nonsuit of Sarah and Aura did not foreclose its ability to seek damages from Lingle, who Sage alleged conspired with both Sarah and Aura to steal from Sage and participated in receiving and spending Sage's stolen funds and covering up Sarah's conduct. Because Lingle defaulted and thereby admitted both the truth of the facts set out in Sage's petition and his liability on any cause of action properly alleged by those facts, Lingle, as one of the conspirators, can be held liable in furtherance of the conspiracy for all acts done by Sarah. *See Paradigm Oil*, 372 S.W.3d at 183; *see also Klinek*, 596 S.W.3d at 447–48 (holding conspirator

liable for civil conspiracy despite no finding of the tortfeasor's liability because the tortfeasor settled his case in a prior lawsuit); *Paschal*, 215 S.W.3d at 451 (holding widow liable for conspiring with her late husband, who the jury found breached his fiduciary duty by stealing money from his employer, although the employer did not sue the deceased employee or his estate).

**DAMAGES**

Within Lingle's argument that the trial court erred by not modifying the default judgment to conform to the pleadings because Sage nonsuited its claims against Sarah and Aura, Lingle contends the damage award of $418,816.72 should have been modified as a take nothing judgment. To the extent Lingle challenges the damages awarded, we address it separately below.

*A. Applicable Law*

As previously stated, "[i]t is well settled that once a default judgment is taken against a non-answering defendant on an unliquidated claim, all allegations of fact set forth in the petition are deemed admitted, *except* the amount of damages." *Tex. Commerce Bank, Nat'l Ass'n v. New*, 3 S.W.3d 515, 516 (Tex. 1999) (emphasis added). With one exception not applicable here, Rule 243 of the Texas Rules of Civil Procedure requires the trial court to receive "evidence as to damages" before "render[ing] a judgment therefor." TEX. R. CIV. P. 243. Although a plaintiff must produce evidence of unliquidated damages before a trial court may enter a default judgment on those damages, such evidence may be produced in the form of affidavits as long as the amount of unliquidated damages can be proved with reasonable certainty. *See New*, 3 S.W.3d at 516–18; *Holt Atherton*, 835 S.W.2d at 84; *see also* TEX. R. CIV. P. 243. For liquidated damages, however, the trial court can render a default judgment if it can verify the damages by referring to the allegations in the petition, and they are "proved by an instrument in writing." TEX. R. CIV. P. 241; *see Whitaker v. Rose*, 218 S.W.3d 216, 220 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

Before we can determine whether there is sufficient evidence to support the damages awarded in this case, we must first determine whether the damages are liquidated or unliquidated. "A claim is liquidated if the amount of damages may be accurately calculated by the trial court from the factual, as opposed to the conclusory, allegations in plaintiff's petition and the instrument in writing." *Aavid Thermal Tech. of Tex. v. Irving Ind. Sch. Dist.*, 68 S.W.3d 707, 711 (Tex. App.—Dallas 2001, no pet.). "If the instrument in writing is attached to the plaintiff's petition and if the amount of damages can be calculated from the allegation in the petition, judgment should be entered for that amount against the defaulting defendant." *First Nat'l Bank of Irving v. Shockley*, 663 S.W.2d 685, 688 (Tex. App.—Corpus Christi–Edinburg 1983, no writ); *see also Novosad v. Cunningham*, 38 S.W.3d 767, 773 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (holding suit to recover amount due for professional services was a liquidated claim proved by written instruments where plaintiff attached original invoices to verified petition and motion for default judgment).

In contrast, "unliquidated damages are not susceptible to exact calculation and involve a range of possible answers." *Paradigm Oil*, 372 S.W.3d at 186. "For this reason, a defaulting defendant admits facts establishing liability but not any claimed amount of unliquidated damages." *Id.* (citing *Holt Atherton*, 835 S.W.2d at 83).

*B. Analysis*

Here, Sage attached to its petition and its motion for default judgment an affidavit from its current bookkeeper who discovered the misappropriation of funds. In her affidavit, she attested to damages in the amount of $1,675,266.88. Sage also attached the affidavit of James D. Rahe, one of its owners and principals, to its petition and included Sage's bank records from August 2020 to August 2022, documents provided to its bank indicating which forged checks Sage reported to the

police, and copies of the canceled checks, indicating specific, unauthorized transactions made by Sarah. Sage did not attach additional written instruments, such as bank records or canceled checks, to support the alleged misappropriated funds from January 2018 through July 2020, accounted for in Sage's bookkeeper's affidavit. Absent additional written instruments to prove the accrued damages from January 2018 through July 2020, the trial court could not accurately calculate those damages, and instead relied on conclusory allegations in Sage's petition, the affidavits attached to Sage's petition, and Sage's motion for default judgment and its attachments. *See Holt Atherton*, 835 S.W.2d at 84 ("The amount of [unliquidated damages] must be shown with competent evidence with reasonable certainty."); *see also* TEX. R. APP. P. 243 ("If the cause of action is unliquidated or be not proved by an instrument in writing, the court shall hear evidence as to damages and shall render judgment therefor[.]").

Because the damages attributed to Sarah's misappropriation of funds from January 2018 through July 2020 cannot be accurately calculated from the factual, as opposed to the conclusory, allegations in Sage's petition and its attached affidavits, or from Sage's motion for default judgment and its attached affidavit, those damages are unliquidated. The evidence does not support the amount of misappropriated funds totaled $1,675,266.88.

Nevertheless, the default judgment awards Sage $418,816.72 in damages, not $1,675,266.88. Sage's petition, the affidavits attached to Sage's petition, and Sage's motion for default judgment and its attachments support damages exceeding the amount awarded to Sage by the trial court. Thus, damages in the amount of $418,816.72 is a liquidated claim for which Lingle is liable for the entire amount. *See Aavid Thermal*, 68 S.W.3d at 711; *see also Agar Corp.*, 580 S.W.3d at 140 ("[C]ivil conspiracy is a vicarious liability theory that imparts joint-and-several liability to a co-conspirator who may not be liable for the underlying tort.").

Therefore, the trial court did not err in denying Lingle's motion to modify the default judgment to conform to Sage's pleadings, including the trial court's award of $418,816.72 in damages to Sage.

We overrule Lingle's appellate issue.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's final default judgment.

Irene Rios, Justice