**Mike REAGAN, Appellant,**

v.

**Guy A. LYBERGER and Peggy Lyberger, Appellee.**

No. 05–99–01050–CV.

Court of Appeals of Texas, Dallas.

March 8, 2005.

Michael Louis Strasser, Garland, Mark Heidenheimer, Mark Heidenheimer, P.L.L.C., McKinney, for Appellant.

D. Brent Lemon, Law Office of D. Brent Lemon, Dallas, for Appellee.

Before Justices MORRIS, WHITTINGTON, and O'NEILL.

## OPINION

Opinion by Justice MORRIS.

In this appeal from a jury verdict, Mike Reagan contends there is no evidence or insufficient evidence to support the judgment against him on the basis of partnership, conspiracy, or joint enterprise. Guy and Peggy Lyberger respond that there is ample evidence to support the jury's verdict against Reagan on each of these grounds. After reviewing the record, we agree the evidence is both legally and factually sufficient to support the jury's findings with respect to Reagan. We affirm the trial court's judgment.

## I.

This case arises out of an agreement between Guy and Peggy Lyberger and Mike Anderson d/b/a Great Western Homes for the construction of a new house. During the course of building the house, issues arose with respect to how the money allocated for construction costs was being spent. In August 1994, the senior vice president of the bank funding the project called a meeting with Anderson and the Lybergers to determine the status of the construction and financing. Mike Reagan was also asked to attend the meeting because he had information about Anderson's billing records. According to Anderson, Reagan handled the bookkeeping for Great Western Homes's construction projects by tracking the checks and receipts going through Anderson's account.

Peggy Lyberger testified that, shortly after the meeting was held, she and her husband stopped communicating with Anderson about financial matters and instead dealt solely with Reagan. Lyberger stated, and Anderson conceded at trial, that Anderson referred to Reagan as his partner. Reagan faxed the Lybergers financial information regarding the construction. Lyberger testified that Reagan also attempted to negotiate with them concerning items on the house that needed to be completed. On one occasion, according to Lyberger, Anderson told her he could not authorize the completion of a retaining wall for the house because Reagan told him they needed to get the money to pay for it first.

In September 1994, several subcontractors refused to continue working on the house because they were not being paid. After the subcontractors walked off the job, the house was vandalized by, among other things, holes being punched in the walls and wallpaper being torn off. Peggy Lyberger's mother testified that while she and her husband were at the house trying to repair some of the damage, Reagan came by and told her that he was Anderson's partner. Reagan then told her he wanted to "check out the progress of the construction site." Reagan proceeded to walk around and inspect the house.

The Lybergers did not close on the purchase of their home until March 1995 due to the problems with the construction and financing. After investigating Anderson's finances, criminal charges were brought against him and he pleaded guilty to misappropriation of trust funds. Anderson was required to pay $40,000 to the subcontractors on the Lyberger house. The Lybergers brought this civil suit against Anderson, Reagan, and Holley & Son Concrete Co., alleging claims for negligence, gross negligence, breach of contract, breach of warranty, fraud, violations of the Texas Deceptive Trade Practices Act, and conversion.

At trial, the Lybergers presented evidence that Reagan and Anderson had an ongoing business relationship that began before Anderson contracted to build the Lybergers' home. In addition to performing bookkeeping services for Anderson, Reagan allowed Anderson to use his credit card to purchase appliances for another home being built by Great Western Homes. Furthermore, during the time that Anderson was building the Lybergers' house, Reagan loaned Anderson approximately $6000. Anderson repaid the loan with checks drawn off the Great Western Homes account. One of the checks to Reagan noted that it was for "consulting." Finally, Reagan testified that while Anderson was building the Lybergers' home, he and Anderson were negotiating a Profits Participation Agreement under which Anderson and Great Western Homes would build houses and Reagan, along with a man named David Hoover, would act as the business managers. The agreement set forth how the men would split the profits earned from the venture and how the losses and liabilities were to be allocated. Anderson, Reagan, and Hoover signed the Profits Participation Agreement in October 1994.

After hearing the evidence, the jury found that Anderson and Reagan were engaged in both a partnership and a joint enterprise. The jury further found that Reagan was part of a conspiracy that damaged the Lybergers. The trial court signed the judgment ordering that the Lybergers recover jointly and severally from Anderson and Reagan $45,799.14 in damages. Reagan brought this appeal arguing there is no evidence or insufficient evidence to support the jury's findings of his liability on the basis of partnership, joint enterprise, or conspiracy.

## II.

■ The standard of review when addressing issues of legal and factual sufficiency is well established. An appellant attacking the legal sufficiency of an adverse finding on an issue on which he did not have the burden of proof must demonstrate on appeal that there is no evidence to support the adverse finding. *See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983). In evaluating a no evidence challenge, we consider only the evidence and inferences tending to support the finding and disregard all contrary evidence and inferences. *Merrell Dow Pharmaceuticals v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). If there is more than a scintilla of evidence to support the finding, we will not reverse the trial court's judgment. *Id.* When reviewing a finding for factual sufficiency, however, we consider all of the evidence and will set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam).

We first address Reagan's contention that the evidence is legally and factually insufficient to support the jury's finding that he and Anderson were engaged in a partnership. Under the Texas Revised Partnership Act, "an association of two or more persons to carry on a business for profit as owners creates a partnership, whether the persons intend to create a partnership and whether the association is called a 'partnership,' 'joint venture,' or other name." *See* Tex.Rev.Civ. Stat. Ann. art. 6132b–2.02 (Vernon Supp.2004–05). In general, a partner is liable jointly and severally for all debts and obligations of the partnership. *See id.* at art. 6132b–3.04. The factors indicating the creation of a partnership include: (1) receipt or right to receive a share of profits of the business; (2) expression of intent to be partners in the business; (3) participation or right to participate in control of the business; (4)

sharing or agreeing to share losses of the business or liability for claims by third parties against the business; and (5) contributing or agreeing to contribute money or property to the business. *Id.* at art. 6132b–2.03. Not all of these factors need be present for a partnership to exist and no one factor is dispositive. *See McDowell v. McDowell,* 143 S.W.3d 124, 129 (Tex. App.-San Antonio 2004, pet. denied).

■ In this case, the Lybergers presented evidence that, at the time their house was being built, Reagan was actively participating in the home building business with Anderson and had at least some control over the business's financial aspects. Anderson testified that he referred to Reagan as his partner and other witnesses stated Reagan identified himself as Anderson's partner thus demonstrating an intent or understanding between the men that they were working together as partners. Finally, by loaning Anderson money and allowing him to charge appliances on his credit card, Reagan contributed money to the home building business. This evidence fits within the second, third, and fifth enumerated factors the legislature determined should be considered when determining whether a partnership exists. *See* TEX.REV.CIV. STAT. ANN. art. 6132b–2.03. Because the Lybergers presented evidence that three of the five factors indicating a partnership existed between Reagan and Anderson during the time their house was being built, we conclude the evidence was sufficient to support the jury's finding that Reagan engaged in a partnership with Anderson as to the construction of the Lybergers' home.

The finding of partnership is further strengthened by the fact that Reagan and Anderson eventually signed a Profits Participation Agreement agreeing to split the profits and losses of the home building business in which they were engaged. Although they did not sign the agreement until after the problems with the Lybergers' house had begun to develop, the addition of the first and fourth factors set forth in the Texas Revised Partnership Act to the other three factors already present in the business relationship between Reagan and Anderson suggests that the relationship was intended to be a partnership from its inception. Although Reagan and Anderson strongly denied at trial that they ever intended to create a partnership and disputed the Lybergers' evidence of Reagan's involvement in the home building business, the jury was free to resolve the inconsistencies and conflicting testimony in the Lybergers' favor. *See McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex. 1986).

Reagan also contends the Lybergers' claims against him based on his alleged partnership with Anderson must fail because the Lybergers did not name the partnership as a party in the suit. Reagan relies on the cases of *Fincher v. B & D Air Conditioning and Heating Co.,* 816 S.W.2d 509 (Tex.App.-Houston [1st Dist.] 1991, writ denied) and *Texaco, Inc. v. Wolfe,* 601 S.W.2d 737 (Tex.Civ.App.-Houston [1st Dist.] 1980, writ ref'd n.r.e.) for the proposition that to hold him liable as a partner, the Lybergers must sue the alleged partnership. Reagan's reliance on these cases is misplaced.

The issue before the court in *Fincher* was whether a partner could be held individually liable when the petition alleged a cause of action only against the partnership. The court concluded that once liability was established against the partnership, the joint and several liability of the individual partners followed as a matter of law. *See Fincher,* 816 S.W.2d at 513. Nothing in *Fincher* suggests that suing the partnership entity is necessary before holding the partners individually liable.

Indeed, the court notes that the better practice is to name each individual partner as a defendant to the suit. *Id.*

In *Wolfe,* the court upheld the jury's finding that Wolfe was not liable to Texaco on the basis of partnership. The reasoning behind the court's decision was that nowhere in Texaco's trial pleadings or its motion for new trial was there an assertion of partnership. *See Wolfe,* 601 S.W.2d at 741. A litigant cannot succeed upon a theory not set forth in his pleadings. *Id.* By comparison, the Lybergers clearly alleged in their pleadings that Reagan and Anderson were engaged in a partnership and that Reagan was liable to them based on that relationship. As with *Fincher,* the *Wolfe* opinion does not require that the alleged partnership be named as a party to the suit for the individual partners to be held liable. *Wolfe* requires only that the partnership theory of liability be asserted in the pleadings as it was in this case. *See id.* Reagan cites us to no cases, and we have found none, requiring that the partnership entity be sued separately to hold the individual partners liable.

We conclude Reagan's challenges to the judgment against him on the basis of partnership are without merit. Having concluded the evidence supports the judgment on this ground, it is unnecessary for us to address Reagan's remaining issues on appeal.

We affirm the trial court's judgment.