IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 06-0815
════════════
 
Jesse C. Ingram, Ph.D. and 
Behavioral Psychology Clinic, P.C., Petitioners,
 
v.
 
Louis Deere, D.O. and Hillvale Medical Group Association d/b/a Hillvale Medical Association, Respondents
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Fifth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued February 
16, 2008
 
 
            
Justice Wainwright 
delivered the opinion of the Court, in which Chief Justice Jefferson, Justice Hecht, Justice Medina, Justice 
Green, and Justice Willett 
joined, in which Justice O’Neill 
and Justice Brister joined 
except as to part II.D.5.a, and in which 
Justice Johnson joined except as to part II.D.2.
 
            
Justice Johnson filed a 
concurring opinion.
 
            
In this case, we review a court of appeals judgment reinstating a jury 
verdict finding that Louis Deere, D.O. and Jesse C. Ingram, Ph.D. formed a 
partnership pursuant to the Texas Revised Partnership Act (TRPA).
            
TRPA lists five factors to be considered in determining whether a 
partnership has been formed. This determination should be made by examining the 
totality of the circumstances in each case, with no single factor being either 
necessary or sufficient to prove the existence of a partnership. Here, the 
evidence is legally insufficient to establish that a partnership existed between 
Ingram and Deere. Because the evidence of the formation of a partnership is 
legally insufficient, we do not address the issue raised in Ingram’s 
cross-petition challenging the court of appeals’ decision that Ingram owed Deere 
a fiduciary duty. Accordingly, we reinstate the trial court’s take-nothing 
judgment in favor of Ingram and reverse the court of appeals’ judgment.
I. FACTUAL AND PROCEDURAL BACKGROUND
            
Ingram, a licensed psychologist, and Deere, a board certified 
psychiatrist, entered into an oral agreement in 1997, which provided that Deere 
would serve as the medical director for a multidisciplinary pain clinic. Deere 
contends that they agreed he would receive one-third of the clinic’s revenues, 
Ingram would receive one-third, and the remaining one-third would be used to pay 
the clinic’s expenses. Deere also claims that when he and Ingram began working 
together, Ingram told him their work “was a joint venture, or [they] were 
partners, or [they] were doing this together.” Ingram contends that they only 
agreed Deere would receive one-third of the 
clinic’s revenues and that there was no agreement as to the other two-thirds. 
Deere acknowledges that, during his time at the clinic, 
he never contributed money to the clinic, he did not participate in the hiring 
of any employees, he did not know any of the clinic staff’s names, he never 
purchased any of the clinic’s equipment, his name was not on the clinic’s bank 
account, and his name was not on the lease agreement for the clinic 
space.
            
Fourteen months after Deere began working at the clinic, Ingram 
prepared a written agreement to memorialize their arrangement. The document was 
entitled “Physician Contractual Employment Agreement” and stated that Ingram was 
the “sole owner” of the clinic. Deere refused to sign the document, claiming 
that it contradicted their initial arrangement. Immediately after Deere received 
the document, he ceased working at the clinic.
            
Deere later sued Ingram, asserting claims of common law fraud, statutory 
fraud, fraudulent inducement, breach of contract, breach of fiduciary duty, and 
declaratory judgment and seeking specific performance, damages, and attorneys’ 
fees. The jury found that Deere and Ingram entered into a partnership agreement 
and that Ingram breached the agreement and his fiduciary duty to Deere. The 
trial court entered judgment on the jury verdict awarding damages of 
(1) $34,249.68 for compensation owed Deere through March 1999, 
(2) $2,525,437.00 for Deere’s share of the partnership’s revenue from April 
1999 through the time of trial, (3) $2,500,000.00 for Deere’s share of 
revenue to accrue after trial, and (4) $27,500.00 in attorneys’ fees for 
the trial stage with additional fees in the event of a motion for new trial and 
various appeals.
            
Ingram filed a motion for judgment non obstante 
veredicto (judgment n.o.v.). 
After a hearing, Judge David Evans signed a new judgment, eliminating a portion 
of the damages awarded by the jury and reducing the award of attorneys’ fees. 
Following his decision, Judge Evans recused himself 
without explanation, and the case was assigned to Judge Merrill Hartman. Ingram 
then filed a second motion for judgment n.o.v. or, in 
the alternative, a motion for new trial. Judge Hartman signed a judgment n.o.v. and rendered a take-nothing judgment in Ingram’s 
favor.
            
The court of appeals reversed the trial court’s take-nothing judgment on 
the second motion for judgment n.o.v. and reinstated 
the trial court’s judgment on the first motion for judgment n.o.v. The court held that Ingram waived his right to 
challenge the existence of a partnership because he failed to raise the issue in 
his second motion for judgment n.o.v. 198 S.W.3d 96, 
100. Without discussing whether Deere and Ingram created a partnership, the 
court held that there was legally sufficient evidence to support the jury’s 
finding that the partnership continued to exist through the time of trial. Id. at 101–02. However, the court affirmed the trial 
court’s ruling that Ingram did not owe Deere a fiduciary duty, as there was no 
evidence of a confidential relationship between Deere and Ingram that would give 
rise to an informal fiduciary duty. Id. at 
102–03. On appeal to this Court, Ingram argues that the court of appeals 
erred in reinstating the trial court’s judgment on the first motion for judgment 
n.o.v. because there is no evidence that Deere and 
Ingram created a partnership. Deere principally contends that Ingram waived all 
of the alleged errors in one way or another at the trial court. Deere also filed 
a cross-petition appealing the court of appeals’ adverse ruling on his breach of 
fiduciary duty claim.1 Because we conclude there is no evidence of a 
partnership, we do not reach the other issues raised by Deere or 
Ingram.
II. LAW AND ANALYSIS
A. Preservation of Error
            
As an initial matter, we must address Deere’s contention that Ingram 
failed to preserve his no evidence argument regarding the existence of a 
partnership. First, Deere argues Ingram failed to preserve his no evidence 
argument because he did not file a verified denial in response to Deere’s claim 
that they were partners, which Texas Rule of Civil Procedure 93(5) requires. It 
is undisputed that Ingram did not file the requisite verified denial. However, 
this issue was tried by consent of the parties. When both parties present 
evidence on an issue and the issue is developed during trial without objection, 
any defects in the pleadings are cured at trial, and the defects are waived. 
Tex. R. Civ. P. 67; Sage St. Assocs. v. Northdale Constr. Co., 863 
S.W.2d 438, 445–46 (Tex. 1993).
            
We addressed a similar issue in Sage Street. In that case, we 
discussed whether the trial court should have submitted a contract’s ambiguity 
to the jury, although neither party pleaded it. Sage St., 863 S.W.2d at 444–46. We reiterated the long-standing rule 
that an issue is “not tried merely by the hearing of testimony thereon.” Id. 
at 446 (citing Harkey v. Tex. Employers’ 
Ins. Ass’n, 208 S.W.2d 919, 922 (Tex. 1948)). 
However, because both parties presented conflicting testimony on the 
subject and allowed the issue to be raised in the jury charge, the contract’s 
ambiguity was tried by consent. Id. Here, not only did both parties 
present evidence at trial to affirm or controvert the existence of a 
partnership, but Deere, the party arguing that a partnership existed, also 
submitted the issue in the jury charge. The issue was developed at trial, and 
both parties understood that it was contested. Accordingly, the failure to file 
a verified denial did not preclude Ingram from raising the issue on appeal.
            
Second, Deere argues that error was not preserved because Ingram’s motion 
for a judgment n.o.v. did not assign a no evidence point of error regarding the jury’s answer to the 
partnership question. However, Ingram prevailed on his motion for judgment n.o.v. Thus, as the prevailing party, he need only raise the 
issue of whether a partnership existed as a cross-point. Tex. R. App. P. 38.2(b). When a trial court 
renders judgment n.o.v. and the losing party appeals, 
the prevailing party may also appeal and present points 
or issues on any ground that would either vitiate the verdict or preclude 
affirming the judgment and reinstating the verdict, including grounds not raised 
in the judgment n.o.v. See id. (providing that when a trial court renders a judgment n.o.v., “the appellee must bring 
forward by cross-point any issue or point that would have vitiated the 
verdict or that would have prevented an affirmance of 
the judgment if the trial court had rendered judgment on the verdict” (emphasis 
added)). This is an exception to the general rule that as a prerequisite to 
presenting a complaint for appellate review, the record must show that the 
complaint was made to the trial court and that the trial court ruled or refused 
to rule on the request. See Tex. 
R. App. P. 
33.1(a). Because Ingram properly raised the issue to the 
court of appeals, he did not waive the issue for review by either this Court or 
the court of appeals.
B. Standard of Review
            
When reviewing a court of appeals judgment reversing the trial court’s 
judgment n.o.v., we conduct a legal sufficiency 
analysis of the evidence. Guevara v. Ferrer, 247 S.W.3d 662, 665 (Tex. 2007). We 
review the evidence presented at trial in the light most favorable to the jury’s 
verdict, crediting evidence favorable to that party if reasonable jurors could 
and disregarding contrary evidence unless reasonable jurors could not. Id.
C. Partnership Law
1. Texas 
Common Law
            
Under the common law, the Court recognized that a partnership or joint 
enterprise “presupposes an agreement to that end,” which could be either express 
or implied. Donald v. Phillips, 13 S.W.2d 74, 76 (Tex. 
1929). We explained that the “intention of the parties to a contract is a 
prime element in determining whether or not a partnership or joint venture 
exists.”2 
Coastal Plains Dev. Corp. v. Micrea, Inc., 572 
S.W.2d 285, 287 (Tex. 1978) (citing Luling Oil & Gas Co. v. Humble Oil & Ref. 
Co., 191 S.W.2d 716, 722 (Tex. 1946) (“[A] court would not declare that a 
partnership existed unless that intention clearly 
appeared . . . .”)). The common law also considered that 
profit sharing was the most important factor shedding light on the intention to 
establish a partnership. See Friedlander v. Hillcoat, 14 S.W. 786, 787 (Tex. 1890) (“A common 
interest in the profits is an essential element to constitute a partnership.”). 
These two elements were incorporated into a five-factor test that developed 
under the common law for partnership formation: (1) intent to form a 
partnership, (2) a community of interest in the venture, (3) an 
agreement to share profits, (4) an agreement to share losses, and 
(5) a mutual right of control or management of the enterprise. Coastal 
Plains, 572 S.W.2d at 287 (citing Brown v. Cole, 291 S.W.2d 704, 709 
(Tex. 1956), and Luling Oil & Gas, 
191 S.W.2d at 722). These factors continued to guide the question of partnership 
formation when Texas promulgated and later amended statutory regimes governing 
partnerships.
2. Texas 
Statutory Law
            
The Texas Uniform Partnership Act (TUPA) was passed in 1961 and 
substantially adopted the major provisions of the Uniform Partnership Act (UPA), which itself was 
adopted in every state except Louisiana after it was approved by the National 
Conference of Commissioners on Uniform State Laws in 1914. See Harry J. 
Haynsworth, IV 
et al., Should the Uniform Partnership Act Be Revised?, 43 Bus. Law. 121, 
121 (1987); Revised Unif. P’ship 
Act, 6 U.L.A. 45 (1997). TUPA was replaced by TRPA, effective January 1, 
1994,3 
the result of a project of the Partnership Law Committee of the State Bar of 
Texas Section on Business Law and the Texas Business Law Foundation. Act of May 
31, 1993, 73rd Leg., R.S., ch. 917, § 1, 1993 
Tex. Gen. Laws 3887, 3893. TRPA carried forward some of the common law 
modifications in ways relevant to this case that were promulgated in TUPA. The 
partnership in this case was allegedly formed in 1997. It is uncontested that 
TRPA governs this dispute; rather, the parties contest whether Deere has proven 
the existence of a partnership under TRPA.4
            
TRPA provides that “an association of two or more persons to carry on a 
business for profit as owners creates a partnership.” Tex. Rev. Civ. Stat. art. 6132b-2.02(a). Unlike TUPA,5 
TRPA articulates five factors, similar to the 
common law factors, that indicate the creation of a partnership. They are:
 
(1) receipt or right to receive a share of profits of the 
business;
(2) expression of an intent to be partners in the business;
(3) participation or right to participate in control of the 
business;
(4) sharing or agreeing to share:
(A) 
losses of the business; or
(B) 
liability for claims by third parties against the 
business; and
(5) contributing or agreeing to contribute money or property to 
the business.[6]
 
Id. art. 6132b-2.03(a). The 
common law required proof of all five factors to establish the existence of a 
partnership. See Coastal Plains, 572 S.W.2d at 
287. However, TRPA contemplates a less formalistic and more practical 
approach to recognizing the formation of a partnership.
            
First, TRPA does not require direct proof of the parties’ intent to form 
a partnership. Tex. Rev. Civ. Stat. art. 6132b-2.02 (stating that two or more persons may form a partnership 
regardless of “whether the persons intend to create a partnership”). 
Formerly, the intent to be partners was a “prime,” although not controlling, 
element in the creation of a partnership. Coastal Plains, 572 S.W.2d at 287. Instead, TRPA lists the “expression of 
intent” to form a partnership as a factor to consider. Tex. Rev. Civ. Stat. art. 6132b-2.03(a)(2). Second, unlike the common law, TRPA does not require 
proof of all of the listed factors in order for a partnership to exist. 
Third, sharing of profits—deemed essential for establishing a partnership under 
the common law—is treated differently under TRPA because sharing of profits is 
not required. Cf. Friedlander, 14 S.W. at 787 (“A common interest in the 
profits is an essential element to constitute a partnership.”). Still, TRPA 
comments note that the traditional import of sharing profits as well as control 
over the business will probably continue to be the most important factors. Tex. Rev. Civ. Stat. art. 6132b-2.03 Comment of Bar Committee. Additionally, 
TRPA recognizes that sharing of losses may be indicative of a partnership 
arrangement but states that such an arrangement is “not necessary to create a 
partnership.” Id. art. 6132b-2.03(c). TRPA also restates and extends the list of 
circumstances in TUPA that do not by themselves indicate that a person is a 
partner.7 Id. art. 6132b-2.03(b).
            
The question of how many of the TRPA factors are required to form a 
partnership is a matter of first impression for this Court. The TRPA factors 
seem to serve as a proxy for the common law requirement of intent to form a 
partnership by identifying conduct that logically suggests a collaboration of a 
business’s purpose and resources to make a profit as partners. After examining 
the statutory language and considering that TRPA abrogated the common law’s 
requirement of proof of all five factors, we determine that the issue of whether 
a partnership exists should be decided considering all of the evidence bearing 
on the TRPA partnership factors. While proof of all five common law factors was 
a prerequisite to partnership formation under the common law, the 
totality-of-the-circumstances test was, in some respect, foreshadowed in Texas 
case law. As Justice Jack Pope wrote for the San Antonio Court of Appeals,
 
No single 
fact may be stated as a complete and final test of partnership. Each case must 
rest on its own particular facts and the presence or absence of the usual 
attributes of a partnership relation. The earlier Texas rule indicated that 
profit sharing was the controlling test. We think it is now generally held that 
such a test is not all-inclusive and controlling . . . . The absence of an 
express provision obligating the parties to share in the losses is also 
important and indicates that no partnership existed. But this feature too is not 
controlling.
 
Davis v. Gilmore, 244 S.W.2d 671, 673–74 (Tex. Civ. App—San Antonio 1951, writ ref’d) (citations omitted). Many states apply this 
totality-of-the-circumstances test.8
            
We note the difficulty of uniformly applying a 
totality-of-the-circumstances test, see Perry Homes v. Cull, 258 S.W.3d 
580, 592 (Tex. 2008) (explaining the difficulty of applying a 
totality-of-the-circumstances test in determining whether a party waived an 
arbitration clause in a contract), but we cannot ignore the Legislature’s 
decision to codify the essential common law partnership factors in TRPA without 
specifying that proof of all or some of the factors is required to establish a 
partnership. See Tex. Rev. Civ. Stat. art. 6132b-2.03; In re 
M.N., 262 S.W.3d 799, 802 (Tex. 2008) (explaining that courts presume that 
the Legislature included each word in the statute for a purpose and that words 
not included were purposefully omitted). Yet, we can provide additional 
guidelines for this analysis. Of course, an absence of any evidence of the 
factors will preclude the recognition of a partnership under Texas law. Cf. 
Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 176 (Tex. 1997) 
(applying TUPA). Even conclusive evidence of only one factor normally will be 
insufficient to establish the existence of a partnership.9 
To hold otherwise would create a probability that some business owners would be 
legally required to share profits with individuals or be held liable for the 
actions of individuals who were neither treated as nor intended to be partners. 
See Tex. Rev. 
Civ. Stat. art. 6132b-3.03(a) (explaining that a partnership is liable for the acts 
of a partner done with authority or in the ordinary course of the partnership’s 
business); see also Kao Holdings, L.P. v. Young, 261 S.W.3d 60, 63 
(Tex. 2008). The Legislature does not indicate that it intended to spring 
surprise or accidental partnerships on independent business persons, if, for 
example, an employee is paid out of business profits with no other indicia of a 
de facto partnership under TRPA. On the other end of the spectrum, conclusive 
evidence of all of the TRPA factors will establish the existence of a 
partnership as a matter of law. The challenge of the 
totality-of-the-circumstances test will be its application between these two 
points on the continuum.
D. Existence of a Partnership
            
In this case, we consider whether more than a scintilla of evidence of 
any of the factors indicative of a partnership was introduced at trial.
1. Profit 
Sharing
            
Deere argues that he received or had the right to receive a share of the 
clinic’s profits because he and Ingram had an agreement in which each of them 
would receive one-third of the clinic’s “gross revenue” and the remainder would 
be used for expenses. It is true that the “receipt or right to receive a share 
of profits of the business” may be indicative of the existence of a partnership 
under TRPA, but a share of profits paid as “wages or other compensation to an 
employee or independent contractor” is not indicative of a partnership interest 
in the business. Tex. Rev. Civ. Stat. 
art. 6132b-2.03(b)(1)(B); see Friedlander, 14 S.W. 
at 788; Strawn Nat’l Bank v. Marchbanks, 74 
S.W.2d 447, 449 (Tex. Civ. App.—Eastland 1934, writ 
ref’d) (saying that the “oft-repeated quotation 
‘profits as profits’” . . . “is to utter jargon” because they are not 
profits when paid as compensation for services).
            
The evidence does not establish that Deere received a share of profits as 
contemplated under TRPA for two reasons. First, the agreement between Ingram and 
Deere cannot constitute Deere’s receipt of “profits,” but rather of gross 
revenue. Because TRPA does not define the term 
“profits,” we define it using its ordinary meaning. Tex. Gov’t Code § 312.002; Heritage Res., Inc. v. Nations Bank, 939 S.W.2d 118, 121–22 (Tex. 1996); Ramsay v. Md. 
Am. Gen. Ins. Co., 533 S.W.2d 344, 346 (Tex. 1976). The 
ordinary meaning of “profits” is “[t]he excess of revenues over expenditures in 
a business transaction.” Black’s Law 
Dictionary 1246 (8th ed. 2004). Furthermore, this Court, interpreting 
similar language in TUPA, established that the receipt of gross revenue is not 
profit sharing. See Schlumberger Tech. Corp., 959 S.W.2d at 176 
(interpreting TUPA, Tex. Rev. Civ. Stat. art. 6132b, 
§ 7(3), and explaining that “[e]ntitlement to a 
royalty based on gross receipts is not profit sharing.”). There is no 
evidence that the allocation for expenses was sufficient to satisfy all the 
clinic’s expenses, leaving only profits to be split. Even if some funds may have 
been reserved for expenses, as Deere claims, there is no evidence that Deere’s 
share would have decreased if expenses grew or increased if expenses shrank. 
Simply put, Deere’s share depended on the clinic’s receipts, not its excess of 
revenues over expenditures. Therefore, the evidence in this case leads to one 
conclusion: Deere did not share the clinic’s profits but agreed to and received 
a percentage of the clinic’s gross revenues.
            
Second, Ingram wrote twenty checks to Deere as compensation from January 
1997 until March 1999. These checks referred to Deere as a “medical consultant” 
and the payments as “contract labor.” Therefore, they contradict his argument 
that he received profits as a partner in the clinic. Under TRPA, receipt of 
profits as compensation for an employee’s services or an independent 
contractor’s work is not evidence that parties were partners. Tex. Rev. Civ. Stat. art. 6132b-2.03(b)(1)(B); Strawn Nat’l Bank, 74 S.W.2d at 449. Because 
Deere cashed the checks without challenging the characterizations, this fact 
also does not support his argument.
2. 
Expression of Intent to Be Partners
            
“[E]xpression of an 
intent to be partners in the business” is one of five factors courts use 
in determining whether a partnership exists. Tex. Rev. Civ. Stat. art. 6132b-2.03(a)(2). This is different from the common law definition of a 
partnership that required proof that the parties intended to form a partnership 
at the outset of their agreement. Coastal Plains, 572 S.W.2d at 287 
(citing Luling Oil & Gas, 191 S.W.2d 
at 722); cf. Tex. Rev. Civ. Stat. art. 6132b-2.02 (“An 
association of two or more persons to carry on a business for profit as owners 
creates a partnership, whether the persons intend to create a partnership . . . .” (emphasis added)). Conversely, TRPA evaluates the parties’ 
expression of intent to be partners as one factor, Tex. Rev. Civ. Stat. art. 6132b-2.03(a)(2), and it does not by its terms give the parties’ intent 
or expression of intent any greater weight than the other factors, see Tex. Rev. Civ. Stat. art. 6132b-2.03(a).
            
When analyzing expression of intent under TRPA, courts should review the 
putative partners’ speech, writings, and conduct. While under the common law, 
evidence probative on other factors is considered evidence of “intent,” under 
TRPA, the “expression of intent” factor is an inquiry separate and apart from 
the other factors. Courts should only consider evidence not specifically 
probative of the other factors. In other words, evidence of profit or loss 
sharing, control, or contribution of money or property should not be considered 
evidence of an expression of intent to be partners. Otherwise, all evidence 
could be an “expression” of the parties’ intent, making 
the intent factor a catch-all for evidence of any of the factors, and the 
separate “expression of intent” inquiry would be eviscerated. Such an 
interpretation would undermine the language of TRPA, which establishes five 
separate factors to be considered when determining the existence of a 
partnership. See Tex. Rev. Civ. Stat. 
art. 6132b-2.03.
            
Evidence of expressions of intent could include, for example, the 
parties’ statements that they are partners, one party holding the other party 
out as a partner on the business’s letterhead or name plate, or in a signed 
partnership agreement. See Reagan v. Lyberger, 
156 S.W.3d 925, 928 (Tex. App.―Dallas 2005, no pet.) (interpreting TRPA and holding 
that evidence was sufficient to support a jury finding of the existence of a 
partnership where, among other evidence, the plaintiff testified that he 
referred to the defendant as his business partner and 
other witnesses stated that the defendant identified himself as the plaintiff’s 
partner); Brewer v. Big Lake State Bank, 378 S.W.2d 948, 951 
(Tex. Civ. App.―El Paso 1964, no writ) (explaining that a party 
introducing a person to the bank as the party’s partner is evidence of the 
existence of a partnership).
            
The terms used by the parties in referring to 
the arrangement do not control, Coastal Plains, 572 S.W.2d at 288, and 
merely referring to another person as “partner” in a situation where the 
recipient of the message would not expect the declarant to make a statement of legal significance is not 
enough. See Tex. Rev. Civ. Stat. art. 6132b-2.02(a) (“An 
association of two or more persons to carry on a business for profit as owners 
creates a partnership, whether the . . . association is called a 
‘partnership,’ ‘joint venture’ or other name.”). The term “partner” is regularly 
used in common vernacular and may be used in a variety of ways. Webster’s New Universal Unabridged Dictionary 
1626 (1st ed. 1996) (defining “partner” as one who shares in the 
possession or enjoyment of something with another, one of two or more persons 
who play together in a game against an opposing side, a husband and wife, or 
either of a couple who dances together). Referring to a friend, employee, 
spouse, teammate, or fishing companion as a “partner” in a colloquial sense is 
not legally sufficient evidence of expression of intent to form a business 
partnership. See Murphy v. McDermott Inc., 807 S.W.2d 606, 613 (Tex. 
App.―Houston [14th Dist.] 1991, pet. denied) 
(explaining that although one party referred to the other party as his partner, 
this alone did not create a partnership). However, the same terms could 
constitute legally significant evidence of expression of intent when made in a 
circumstance that indicates significance to the business endeavor. Thus, courts 
should look to the terminology used by the putative partners, the context in 
which the statements were made, and the identity of the speaker and 
listener.
            
Deere argues that he expressed his intent to be a partner with Ingram by 
sharing the clinic’s profits and losses and having access to the clinic’s 
records. His evidence of other factors, sharing of profits and losses and 
control of the business, is insufficient to establish expression of intent. 
Deere’s evidence is also insufficient because there must be evidence that both 
parties expressed their intent to be partners. Tex. Rev. Civ. Stat. art. 6132b-2.03(a) (explaining 
that “[f]actors indicating that persons have created a partnership include their . . . expression of an 
intent to be partners in the business” (emphasis added)). Because Ingram is the 
party denying the existence of a partnership, an expression of intent to be 
partners by Ingram would be of particular interest.
            
The evidence of Ingram’s expression of intent to be business partners is 
the following exchange during Deere’s trial testimony:
 
Q. What 
representations did [Ingram] make to you when you were forming this idea that 
later turned out to be not true?
 
A. [Deere] 
Well, that number one, that this was a joint venture, or that we were partners, 
or we were doing this together.
 
Deere’s 
testimony is unclear and gives the alleged arrangement with Ingram three 
different characterizations—that they were joint venturers, partners, or “were doing this together.” It is 
unclear from this testimony what Ingram believed to be the nature of their 
relationship. Any significance of Deere’s testimony is further obviated because 
he testified that partner “means some people working together.” Accordingly, 
Deere called the employees he supervised at his clinic “partners.” After Deere’s 
counsel explained to him the legal definition of a partnership during his 
testimony, Deere referred to his trial attorney as his “partner” because he was 
“depending on [him].”
            
Deere also testified that the clinic kept its established name after he 
joined as the medical director, and he and Ingram never discussed a name change. 
He never signed a lease agreement for the building owned by Ingram where the 
clinic was housed, was not named on the clinic’s bank account, never signed a 
signature card for the clinic’s bank account, and never filed taxes representing 
that he was co-owner of the clinic. Additionally, Deere paid his own medical 
malpractice insurance, which he acknowledged was his common practice when he did 
contract work. Deere cannot provide the content, context, or circumstances to 
give any of the alleged expressions of intent legal significance as evidence of 
a partnership.
3. 
Control
Deere argues 
he had an equal right to control and manage the clinic’s business because, 
although he was never allowed to see the books and records, he repeatedly 
requested to see them. He also points to Ingram’s testimony that “maybe” Deere 
viewed the clinic’s books on one occasion.10 
Furthermore, Deere argues that he had control because Ingram discussed with him 
how much the clinic made, the amounts paid to the staff, and the need to hire 
Ingram’s wife as personnel director. No other evidence supports support these 
statements and proves he participated in or had the right to control the 
clinic’s business.
The right to 
control a business is the right to make executive decisions. See Brown v. 
Cole, 291 S.W.2d 704, 710 (Tex. 1956) 
(noting that evidence of control of the business could be exercising authority 
over the business’s operations); Guerrero v. Salinas, No. 13-05-323-CV, 
2006 WL 2294578, at *11 (Tex. App.―Corpus Christi 
Aug. 10, 2006, no pet.) (concluding that evidence of 
management or control of the business was the right to write checks on the 
business’s checking account); Tierra Sol Joint Venture v. City of El Paso, 
155 S.W.3d 503, 508 
(Tex. App.―El Paso 2004, pet. denied) (noting that a party does not have control of the business if the party does not have control over and access to the business’s books); Price v. 
Wrather, 443 S.W.2d 348, 351–52 (Tex. Civ. App.―Dallas 1969, writ ref’d n.r.e.) (noting that control of the business could be receiving and 
managing all of the business’s assets and monies). However, being sporadically provided information regarding the 
business does not indicate that Deere had control of or the right to control the 
business. At most, Deere’s evidence demonstrates that Ingram talked with 
Deere about the business. But owners talk with 
consultants, employees, accountants, attorneys, spouses, and many others about 
their businesses, and these conversations do not establish that these people 
have control of the businesses. Likewise, those same classes of people may have 
the opportunity to look at the businesses’ books, but once again, a review of 
the books itself is not evidence of control. Deere submitted no evidence that he 
made executive decisions or had the right to make executive decisions and has 
shown no evidence of this factor.
4. Sharing 
of Losses and Liability for Third Party Claims
            
Contrary to the common law, under TRPA an agreement to share losses 
is not necessary to create a partnership. Tex. Rev. Civ. Stat. art. 6132b-2.03(c); see 
Coastal Plains, 572 S.W.2d at 287. Therefore, while under TRPA the absence 
of an agreement to share losses is not dispositive of 
the existence of a partnership, the existence of such an agreement could support 
Deere’s argument that a partnership existed between him and Ingram. Tex. Rev. Civ. Stat. art. 6132b-2.03(a)(4)(A).
            
According to Deere, he and Ingram agreed that Deere would receive 
one-third of the clinic’s gross revenue, Ingram would receive one-third of the 
clinic’s gross revenue, and the remainder would be used to pay clinic expenses. 
Deere argues that this agreement determined how losses would be shared, but he 
testified that there was never a discussion of how expenses in excess of 
one-third of the clinic’s gross revenue would be divided between him and Ingram. 
The meaning of “net operating losses” is “the excess of operating expenses over 
revenues, the amount of which can be deducted from gross income if other 
deductions do not exceed gross income.” Black’s Law Dictionary 963 (8th ed. 
2004). Here, Ingram and Deere never discussed what would happen to the 
allocation if expenses exceeded one-third of the revenue or gross income. They 
never discussed losses, only expenses. There is no legally cognizable evidence 
to support the contention that Ingram and Deere agreed to share losses.
5. 
Contribution of Money or Property
            
Finally, there is no evidence that Deere “contribut[ed] or agree[d] to 
contribute money or property” to the clinic as a partner. Tex. Rev. Civ. Stat. art. 6132b-2.03(a)(5). Deere does not argue that there was any 
agreement that he contribute either money or property to the enterprise. 
See id. Furthermore, Deere does not 
contend that he actually contributed money to the clinic. In fact, Deere 
acknowledged at trial that he did not contribute to clinic renovations or the 
purchase of medical equipment and supplies and that he did not agree to use his 
personal resources to pay for any expenses in the operation of the clinic. 
Rather, Deere’s only argument regarding this factor is that he contributed his 
reputation as property to the alleged partnership.
            
TRPA defines “property” as “all property, real, personal, or mixed, 
tangible or intangible, or an interest in that property.” Id. art. 6132b-1.01(15). 
Reputation is a type of goodwill and may be valuable intangible property. Tex. & Pac. Ry. Co. v. Mercer, 
90 S.W.2d 557, 560 (Tex. 1936). Therefore, an 
individual’s reputation can be property that is contributed to the partnership. 
However, even if a person lends her good name to a business, she does not 
automatically become a de facto partner. At a minimum, the putative 
partner would have to prove that any such value can be distinguished from 
services rendered or property given as an employee.
            
a. Contribution of Valuable Property
            
Although Deere claims his reputation was a valuable contribution to the 
alleged partnership, the evidence does not support this assertion. Deere argues 
that the testimony of Ingram’s expert, Ron McClellan, who stated that Deere’s 
reputation was a “benefit to the clinic” and “added value” to the clinic, 
supports his claim. However, McClellan only testified generally that Deere’s 
reputation could add value to the clinic, and he acknowledged that his 
statements were unsupported and mere assumptions, stating: “Not knowing Dr. 
Deere and his reputation, I can only assume.” His opinion, therefore, was merely 
speculation. Coastal Transp. Co. 
v. Crown Cent. Petroleum Corp., 136 S.W.3d 227, 232–33 (Tex. 
2004) (quoting Tex. R. Evid. 401). In order to show 
that Deere’s reputation improved the goodwill of the clinic, McClellan, at a 
minimum, had to know Deere’s reputation in the psychiatric or pain management 
fields. McClellan admitted he had no such knowledge. See Taormina 
v. Culicchia, 355 S.W.2d 569, 574 
(Tex. Civ. App.—El Paso 1962, writ ref’d n.r.e.) (explaining that the measure of goodwill is “the fixed and 
favorable consideration of customers arising from an established and well-known 
and well-conducted business”).
            
The only other evidence supporting Deere’s claim is his unsubstantiated 
statements given during his testimony that his reputation added value to the 
clinic. Assuming he is qualified to give an opinion on this matter, his 
testimony is devoid of support for that conclusion. Deere testified that he did 
not know how many clients came to the clinic specifically because of his 
presence and that the clinic’s name never changed to highlight his addition to 
the alleged venture. Moreover, the pain clinic was not marketed using his name. 
Neither Deere nor McClellan ever explained how Deere’s reputation contributed to 
the clinic’s success. See Mercer, 90 S.W.2d at 560 (to recover damages 
for goodwill, issues must be submitted to the jury to obtain findings on the 
change in value of the business); Taormina, 335 
S.W.2d at 574 (noting that the witness arrived at a sum for goodwill after an 
investigation of the business, observation of its operations, and examination of 
its books).
            
b. Contribution as a Partner
            
Furthermore, there is no evidence that Deere added value to the clinic as 
a partner and not an employee. Even if we were to assume that Deere contributed 
quantifiable value and enjoyed a good reputation in the psychiatric or pain 
management fields, he cannot establish this factor without evidence that the 
contribution is distinguishable from the contributions of an employee. Employees 
may contribute to business endeavors by lending their time and reputation, but 
that is not a contribution to the venture indicative of a partnership interest. 
Even assuming Deere’s reputation was impeccable, nothing indicates that Deere 
contributed or agreed to contribute to the clinic as a partner and not as an 
employee. In sum, there is no legally sufficient evidence that Deere contributed 
property to the multidisciplinary pain clinic that would establish a partnership 
interest.
III. CONCLUSION
            
Whether a partnership exists must be determined by an examination of the 
totality of the circumstances. Evidence of none of the factors under the Texas 
Revised Partnership Act will preclude the recognition of a partnership, and even 
conclusive evidence of only one factor will also normally be insufficient to 
establish the existence of a partnership under TRPA. However, conclusive 
evidence of all five factors establishes a partnership as a matter of law. In 
this case, Deere has not provided legally sufficient evidence of any of the five 
TRPA factors to prove the existence of a partnership. Accordingly, we reverse 
the court of appeals’ judgment and reinstate the trial court’s take-nothing 
judgment.
 
 
_____________________________________
Dale 
Wainwright
Justice
 
OPINION 
DELIVERED: July 3, 2009








[1] The only argument Deere makes 
to this Court in support of his claim that Ingram breached a fiduciary duty he 
owed to Deere is that such a duty arose by virtue of their partnership. See 
Tex. Rev. Civ. 
Stat. art. 6132b-4.04 
(recognizing the unwaivable duties of care and loyalty 
and the obligation of good faith required of partners under the Texas Revised 
Partnership Act); see also Bohatch v. 
Butler & Binion, 977 S.W.2d 543, 545 (Tex. 
1998) (recognizing “as a matter of common law that ‘[t]he relationship 
between . . . partners . . . is 
fiduciary in character’”). The court of appeals held there was no evidence of a 
fiduciary relationship between Ingram and Deere. However, we need not address 
the issue of whether there is independent evidence of a fiduciary duty because 
we hold there is no legally sufficient evidence that Ingram and Deere were 
partners.
 
 
[2] 
Prior case law discusses differences between joint 
ventures and partnerships. We see no legal or logical reason for distinguishing 
a joint venture from a partnership on the question of formation of the entity. 
See Gray v. West, 608 S.W.2d 771, 776 (Tex. Civ. App.—Amarillo 1980, writ ref’d n.r.e.). In fact, a 
joint venture that satisfies the definition of “partnership” is a partnership 
subject to TRPA. Tex. Rev. Civ. Stat. art. 6132b-2.02 Comment of Bar Committee. In this case, counsel 
for both Deere and Ingram used the terms interchangeably during 
trial.
[3] 
UPA was revised in 1997 and renamed the Revised 
Uniform Partnership Act (RUPA). Unif. P’ship Act, intro., 6 U.L.A. 5 
(2001). Although Texas has adopted portions of RUPA, it has not adopted 
the uniform act in its entirety. Id. at 
45.
[4] 
Three statutory regimes have governed partnerships 
formed in Texas—TUPA, TRPA, and the Texas Business Organizations Code (TBOC). 
TRPA, enacted in 1993, replaced TUPA. Act of May 31, 
1993, 73rd Leg., R.S., ch. 917, § 1, 1993 Tex. 
Gen. Laws 3887, 3893. TRPA governs partnerships formed on or after January 1, 
1994, and other, existing partnerships that elected to be governed by it. Tex. Rev. Civ. Stat. art. 6132b-11.03(a). In 2003, the TBOC replaced 
TRPA. Act of May 29, 2003, 78th Leg., R.S., ch. 182, § 1, 2003 Tex. Gen. Laws 267, 592–93. The 
TBOC governs partnerships formed on or after January 1, 2006, and other 
partnerships that elect to be governed by the TBOC. Tex. Bus. Orgs. Code § 402.001. In addition, 
TRPA and the TBOC contain transition rules, providing that the preceding law 
will apply to existing partnerships for a period of years after each act’s 
effective date, unless the partnership elects to be governed by the new act 
immediately. Tex. Rev. 
Civ. Stat. art. 6132b-11.03; Tex. Bus. Orgs. Code § 402.001. On January 1, 
2010, TRPA will expire, and the TBOC will apply to all partnerships, regardless 
of their formation date. Tex. Rev. Civ. Stat. art. 6132b-11.03. TRPA and the 
TBOC’s rules for determining partnership formation are 
substantially the same. Compare Tex. Bus. Orgs. Code § 152.052, with 
Tex. Rev. Civ. Stat. art. 6132b-2.03.
[5] 
TUPA did not provide a list of considerations or 
factors that were important or necessary to the establishment of a partnership. 
With one exception, TUPA only provides rules indicating circumstances that did 
not give rise to a partnership. TUPA reads as follows:
 
(1)           
Except as [otherwise provided] persons who are not partners as to each 
other are not partners as to third persons.
(2)           
Joint tenancy, tenancy in common, tenancy by the entireties, joint 
property, common property, or part ownership does not of itself establish a 
partnership, whether such co-owners do or do not share any profits made by the 
use of the property.
(3)           
The sharing of gross returns does not of itself establish a partnership, 
whether or not the persons sharing them have a joint or common right or interest 
in any property from which the returns are derived.
(4)           
The receipt by a person of a share of the profits of a 
business is prima facie evidence that he is a partner in the business, but no 
such inference shall be drawn if such profits were received in 
payment:
                                
(a)                 
As a debt by installments or 
otherwise,
(b)                 
As wages of an employee or rent to a 
landlord,
(c)                 
As an annuity to a widow or 
representative of a deceased partner,
(d)                 
As interest on a loan, though the 
amount of payment vary with the profits of the business,
(e)                 
As the consideration for the sale of 
a good-will of a business or other property by installments or 
otherwise.
(5)                 
Operation of a mineral property 
under a joint operating agreement does not of itself establish a 
partnership.
 
Tex. Rev. 
Civ. Stat. art. 6132b, § 7
[6] 
Four years after TRPA was enacted, Oregon adopted 
factors almost verbatim to the factors listed in TRPA for determining whether a 
partnership exists. Or. Rev. Stat. § 67.055 
(2008). Oregon and Texas are the only states to enact a 
statute that deviates from the UPA’s rules for 
determining the existence of a partnership.
[7] 
According to TRPA, “[one] of the following 
circumstances, by itself, does not indicate
that a 
person is a partner in the business”:
 
(1)                 
the receipt 
or right to receive a share of profits:
(A)               
as repayment 
of a debt, by installments or otherwise;
(B)                
as payment 
of wages or other compensation to an employee or independent 
contractor;
(C)                
as payment 
of rent;
(D)                
as payment 
to a former partner, surviving spouse or representative of a deceased or 
disabled partner, or transferee of a partnership interest;
(E)                 
as payment of interest or other 
charge on a loan, regardless of whether the amount of payment varies with the 
profits of the business, and including a direct or indirect present or future 
ownership interest in collateral or rights to income, proceeds, or increase in 
value derived from collateral; or
(F)                 
as payment 
of consideration for the sale of a business or other property by installments or 
otherwise;
(2)                 
co-ownership of property, whether in 
the form of joint tenancy, tenancy in common, tenancy by the entireties, joint 
property, community property, or part ownership, whether combined with sharing 
of profits from the property;
(3)                 
sharing or having a right to share 
gross returns or revenues, regardless of whether the persons sharing the gross 
returns or revenues have a common or joint interest in the property from which 
the returns or revenues are derived; or
(4)                 
ownership of 
mineral property under a joint operating agreement.
 
Tex. Rev. 
Civ. Stat. art. 6132b-2.03(b).
[8] 
McCrary v. Butler, 540 So. 2d 736, 739 (Ala. 1989) (stating that “[t]here 
is no arbitrary test as to whether a partnership exists, but such a 
determination will be made upon all of the attendant circumstances”); Tripp 
v. Chubb, 208 P.2d 312, 314 (Ariz. 1949) (stating that “the question of the 
existence of a partnership depends upon the intention of the parties,” which 
“must be ascertained from all of the facts and circumstances and the action and 
conduct of the parties”); Moon v. Ervin, 133 P.2d 933, 937 (Idaho 1943) 
(stating that to show a partnership exists, there “must be other facts, showing 
that relationship to have been the intention of the parties”); Parish v. 
Bainum, 138 N.E. 147, 149 (Ill. 1923) (stating 
that “‘[t]he requisites of a partnership are that the parties must have joined 
together to carry on a trade or venture for their common benefit, each 
contributing property or services and having a community of interests in the 
profits’” (quoting Meehan v. Valentine, 145 U.S. 611, 618 (1892))); 
Potts v. Lux, 166 P.2d 694, 697 (Kan. 1946) 
(stating that the question of whether a partnership exists “depends in each 
instance upon the intention of the parties to the arrangement, the terms of the 
agreement creating their relationship and the facts and circumstances evidencing 
the manner in which their business affairs are carried on once that relationship 
has been established”); Lupien v. Malsbenden, 477 A.2d 746, 748 (Me. 1984) (stating that 
“[a] finding that the relationship between two persons constitutes a partnership 
may be based upon evidence of an agreement, either express or implied” 
. . . and “‘[n]o one factor is alone determinative of the existence of 
a partnership’” (quoting Dalton v. Austin, 432 A.2d, 774, 777 (Me. 
1981))); Cyrus v. Cyrus, 64 N.W.2d 538, 541 (Minn. 1954) (stating that a 
partnership exists “if the evidence as a whole reasonably shows that the parties 
have entered into a contractual relation whereby they have combined their 
property, labor, and skill in an enterprise or business as co-owners for the 
purpose of joint profit”); Smith v. Redd, 593 
So. 2d 989, 994 (Miss. 1992) (stating that “[a]n expressed agreement is not 
required; intent may be implied, or established from the surrounding 
circumstances”); Temm v. Temm, 191 S.W.2d 629, 632 (Mo. 1945) (stating that 
“[s]ince partnership rests on the intention of the 
parties each case must be determined upon its own particular facts”); In re 
Keytronics, 744 N.W.2d 425, 441 (Neb. 2008) 
(stating that “[t]he five indicia of co-ownership are only that; they are not 
all necessary to establish a partnership relationship, and no single indicium of co-ownership is either necessary or sufficient 
to prove co-ownership”); Eggleston v. Eggleston, 47 S.E.2d 243, 247 (N.C. 
1948) (stating that a “[p]artnership is a legal 
concept, but the determination of the existence or not of a 
partnership . . . involves inferences drawn from an analysis of 
‘all the circumstances attendant on its creation and operation’” (quoting 
Helvering v. Clifford, 309 U.S. 331, 
335 (1940))); Ins. Agents, Inc. v. Zimmerman, 381 N.W.2d 218, 220 (S.D. 
1986) (stating that “since there is no arbitrary test for determining the 
existence of a partnership, each case must be governed by its own peculiar 
facts” (quoting Munce v. Munce, 96 N.W.2d 661, 663 (S.D. 1959))); Harman v. 
Rogers, 510 A.2d 161, 163 (Vt. 1986) (stating that “[i]n deciding whether a partnership has been created by tacit 
agreement, courts must examine the facts to determine whether the parties 
carried on as co-owners of a business for profit”); Cooper v. Knox, 90 
S.E.2d 844, 847 (Va. 1956) (stating that “‘[n]o one factor or circumstance can 
be taken as a conclusive criterion, but each case must be determined upon its 
own particular facts and surrounding circumstances’” (quoting 68 C.J.S., 
Partnership, § 30)); Pruitt v. Fetty, 
134 S.E.2d 713, 716 (W. Va. 1964) (stating that “[t]here is no general rule 
applicable in determining or ascertaining the question of partnership 
. . . but each case must be governed by its own facts and surrounding 
circumstances”); P&M Cattle Co. v. Hollers20 , 559 P.2d 1019, 1022 
(Wyo. 1977) (stating that “the question of whether . . . a 
[partnership] exists must be gathered from the conduct, surrounding 
circumstances and the transactions between the parties”).
[9] 
In closing argument, Deere’s counsel told the jury 
that a partnership could be established by finding proof of only one factor. He 
argued, “A joint venture is a partnership too, you know. [The judge] put ‘ors’ 
after all these elements. You don’t have to have all of them ladies and 
gentlemen, you can have any one of them, or you can have two of them, or you can 
have three of them . . . .” There was no 
objection to the charge on this point.
[10] 
This argument contradicts Deere’s trial testimony 
that he was never allowed to look at the books.